WESTERN UNION TEL. CO. v. POE, State Auditor, et al.

ADAMS EXP. CO. v. SAME.

(Circuit Court, S. D. Ohio, E. D.    November 7, 1894.)

1. FEDERAL COURTS—FOLLOWING STATE DECISIONS—VALIDITY OF LOCAL STATUTE.
    Where a federal court decides, on demurrer, that a state statute, the validity of which has never been passed upon by the highest court of the state, is in violation of the constitution of such state, and afterwards, but before a final decree is entered in the federal court, the state supreme court decides that such statute is constitutional, the federal court will reverse its former ruling in deference to the decision of the state court.

2. TAXATION—TELEGRAPH AND EXPRESS COMPANIES—NICHOLS LAW—VALIDITY.
    Rev. St. Ohio. § 2778a, known as the "Nichols Law," relating to taxation of telegraph and express companies, is not in violation of Const. Ohio, art. 12, § 2, which requires all property to be taxed by a uniform rule. State v. Jones (Ohio) 37 N. E. 945, followed.    61 Fed. 449, 470, overruled.

Separate bills by the Western Union Telegraph Company and the Adams Express Company against Ebenezer Poe, auditor of the state of Ohio, and others, for injunctions, in which there were decrees

pro confesso. Defendants move to set aside the decrees, for a rehearing of demurrers to the bills, and to dissolve the temporary injunctions. Motions for rehearing granted, and decrees set aside.

Brown & Wells and Ramsey, Maxwell & Ramsey, for complainants.
John K. Richards, Atty. Gen., and Thos. McDougall, for respondents.

TAFT, Circuit Judge. In these two cases the bills sought to enjoin the collection of a tax imposed upon the telegraph company and the Adams Express Company, under an act of the Ohio legislature, known as the "Nichols Law." A restraining order was issued against the defendants, who were the board of appraisers appointed under the act to enforce its provisions. The contention in the bill in each case was that the Nichols law was void, because it violated the constitution of Ohio and the constitution of the United States. Demurrers were filed to the bills, and on the issue raised by them the constitutionalty of the Nichols law was argued. On April 23, 1894, this court filed opinions holding that the law was in violation of that clause of the constitution of Ohio which requires that all property shall be taxed by a uniform rule. See 61 Fed. 449, 470. A short time thereafter, the supreme court of Ohio gave judgment in a mandamus proceeding in which it sustained the validity of the Nichols law, and held that it was not in conflict with the constitution of Ohio. State v. Jones, 37 N. E. 945. The opinion was not handed down until late in July last. In September, the complainants took decrees pro confesso on their bills, the defendants not having answered. The defendants now come into court, and make three motions: First, that the decrees pro confesso be set aside (Accompanying this motion is an affidavit showing that the defendants have a good defense on the facts, and that their delay in answering was because they intended to file a motion for rehearing in this case, based on the decision of the supreme court of Ohio). Second, a motion for a rehearing of the demurrer; and, third, a motion for the dissolution of the injunction. The chief controversy on these motions is whether this court should reverse its rulings with reference to the Nichols law, because of the subsequent opinion of the supreme court of Ohio. Strenuous objection is made to the granting of the motion because of the character of the suit in which the ruling of the supreme court of Ohio was made. An affidavit is filed to show that the suit was collusive, and that both sides of the controversy were conducted and controlled by counsel for defendants. The facts appear to be as follows: The present suits were two of half a dozen which were brought in this court for the same purpose by different express companies and the telegraph company. Among them was a suit brought by the National Express Company. The argument on demurrer in all the suits was heard in December of 1893, and the case was reargued by order of the court on the 23d of March of this year. When the reargument was ordered, the court dismissed the case of the National Express Company, as not involving a sufficient amount to give it jurisdiction. As soon as the

bill of the National Express Company was dismissed, the attorney general of Ohio, with his associate counsel, Mr. McDougall, took steps to procure the immediate hearing of a test case before the supreme court of Ohio; and for this purpose it was arranged with the auditor of Lucas county that he should refuse to put upon the tax duplicate the amount returned to him by the board of appraisers under the Nichols act to be levied against the National Express Company. A proceeding in mandamus was then begun in the supreme court of Ohio to compel the auditor to enter the amount assessed on the duplicate. An answer was drawn by the attorney general to be filed by the auditor, raising the issue of the constitutionalty of the Nichols law, and making its alleged invalidity the ground for his refusal. For this purpose the attorney general procured Mr. D. K. Watson, a lawyer of Columbus, and formerly an attorney general of the state, formally to sign his name to the answer of the auditor as his counsel. He then invited Mr. Maxwell, the counsel for the complainant companies in this court, to appear in the supreme court in behalf of the auditor of Lucas county in the litigation thus begun, and to present to the supreme court the considerations upon which he relied to show that the law was invalid. Counsel for complainants, in this court, refused to take part in the hearing of the case in the supreme court of Ohio, but made a motion to dismiss the same in that court, on the ground that the proceeding was a collusive one, and involved a moot question, because, as shown by affidavit, the National Express Company had, without controversy, tendered and paid the amount assessed against it, to the auditor of Lucas county. The supreme court overruled the motion to dismiss the case, and proceeded to the hearing. As Mr. Maxwell refused to appear on behalf of the auditor of Lucas county in the supreme court of Ohio, Mr. D. K. Watson was regularly employed to represent him, and the cause was heard upon printed briefs and oral argument. A considered opinion has been handed down by the supreme court, and will appear in the official reports of that court as its judgment upon the question of the validity of the Nichols law under the constitution of Ohio.

In passing upon the question originally, this court expressed its embarrassment and hesitation in pronouncing a state law to be invalid because in violation of the state constitution, in advance of a decision by the supreme court of the state. It was fully conceded in that opinion that the supreme court of Ohio was the ultimate tribunal to decide the validity of the state law under the state constitution. This was emphatically laid down by the supreme court of the United States in Pelton v. Bank, 101 U. S. 143, 144. The supreme court of the state has now decided that the Nichols law is constitutional. The case before the court, though the court has overruled a demurrer to the bill, on the ground that the Nichols law is invalid, is nevertheless still pending in court, and no final decree has been entered therein. It seems to me manifest that it is the duty of this court to reverse its former ruling, and make it harmonize with that of the tribunal which has ultimate authority on the subject.

But it is said that the judgment of the supreme court of Ohio was procured by collusion. The facts do not bear out the claim. The

opinion of that court was a considered opinion, after full argument and the filing of printed briefs. The case was a test case brought before the court in a summary way, as many such constitutional questions are brought there, and full opportunity was given for argument by counsel interested to invalidate the law. It is doubtless true that the cause was hurried by counsel for the state, because it was properly thought that a decision by the supreme court of the state— the ultimate tribunal upon such questions—would be much more satisfactory for purposes of administering the law throughout the state than any judgment which this court could give. All the facts tending to show the friendly character of the mandamus proceeding and the made-up feature of the case were known to the supreme court of Ohio, but that court held that it was not a moot case, and that it was one calling for consideration by them. A due respect for the judgments of the supreme court of Ohio makes it indelicate in this court to question the propriety of such a ruling in respect of a case plainly within its jurisdiction. It is pressed upon me that to change my ruling to accord with a subsequent decision of the supreme court of Ohio is to make this court nothing but a tribunal for the registering of the decrees of the supreme court of Ohio. It is the highest duty of a judge or of a court, when shown that its judgment previously expressed is erroneous, to reverse its former ruling, if that be within its power. The question upon which the demurrer turned in this case, as it was argued by counsel and decided by the court, was whether the Nichols law was in violation of the constitution of Ohio. This court thought that it was, for the reasons stated in the opinion filed. Since that time the supreme court of Ohio has decided differently, and that decision is controlling as the law of the state, whether this court be convinced of the correctness of the reasoning in that opinion or not. The decision by the supreme court of Ohio that the Nichols law is constitutional makes it so, for all practical purposes.

Counsel for complainants contends that his clients are entitled to the independent judgment of this court upon the constitutionality of the law. They are; but that judgment must be based on the controlling authorities which come to the knowledge of the court before its final judgment is entered. In certain exceptional cases it is true that the federal courts do not feel bound to follow the decision of the supreme court of the state construing a state law or constitution. When the issue in a circuit court of the United States concerns transactions between individuals entered into on the faith of a particular construction of a state law or constitution, and the circuit court enters a decree sustaining the validity of such construction, all before the supreme court of the state has expressed any opinion on the point, the supreme court of the United States will not reverse the decree of the court below, if it otherwise approves it, simply because meantime the state court has given the law or the constitution a different construction. This was the principle in Burgess v. Seligman, 107 U. S. 32, 2 Sup. Ct. 10. Nor, when transactions have been entered into by individuals on the faith of a certain construction which has been given to a state statute or con-

stitution by the supreme court of the United States, will that court change its opinion because, subsequent to the transactions involved, the state supreme court has taken a different view. This was the case in Carroll Co. v. Smith, 111 U. S. 556, 4 Sup. Ct. 539. Nor, when different constructions have been given to a statute or a constitution by a state court, are the federal courts bound to follow the later decisions, if thereby contract rights which accrued under earlier rulings will be injuriously affected. This principle is established in Douglass v. County of Pike, 101 U. S. 677; Supervisors v. U. S., 18 Wall. 71; and Rowan v. Runnels, 5 How. 134. But the case at bar calls for the application of no such principle. Here is not involved the validity or construction of a law on the faith of which individuals have made contracts, advanced money, or incurred liability. We have here simply a tax law fixing the obligation of artificial persons of a certain class to contribute to the support of the state. In respect of such a law, it would be anomalous and absurd to have a diversity of rulings between the state and the federal courts. The intolerable result of such a diversity would be that companies who could invoke the jurisdiction of the federal courts would not pay the tax, while all those who could not invoke that jurisdiction would be compelled to pay it. There is nothing in the decisions of the supreme court of the United States which gives the slightest warrant for supposing that, in the case of a state tax law, it would not follow the decision of the state supreme court, whenever rendered, and however divergent from its own views the conclusion, provided no federal question was involved. In the State Railroad Tax Cases, 92 U. S. 575, 617, 618, the circuit court of the United States held that a tax law of Illinois was invalid, because in violation of the state constitution. Before the cases reached the supreme court of the United States, on appeal, the supreme court of the state decided that the law was valid. The circuit court decree was accordingly reversed. It is true that in that case the supreme court of the United States concurred with the state court on the merits, but Justice Miller used this language:

"But, if for no other reason, we should reverse the decrees of the circuit court in these cases because the same questions involving the considerations urged upon us here have been decided by the supreme court of the state of Illinois, in a manner which leads to the reversal of these. * * * As the whole matter, then, concerns the validity of a state law, as affected by the constitution of the state, that question and the other one of the true construction of that statute belong to the class of questions in regard to which this court still holds, with some few exceptions, that the decisions of the state courts are to be accepted as the rule of decision for the federal courts. It is, nevertheless, a satisfaction that our judgment concurs with that of the state court, and leads us to the same conclusions."

In Bauserman v. Blunt, 147 U. S. 647, 13 Sup. Ct. 466, Moores v. Bank, 104 U. S. 625, and Green v. Neal's Lessee, 6 Pet. 291, the supreme court reversed the ruling of the circuit court as to the effect of a state statute of limitation, solely because, after the decision by the circuit court, the supreme court of the state had given the statute a different construction. In Stutsman Co. v. Wallace, 142 U. S. 293, 12 Sup. Ct. 227, a case involving the construction of the tax laws

of the territory of Dakota, the supreme court of the territory took one view. The case was carried to the supreme court of the United States for review. Meantime the territory had become a state, and the state supreme court, in another case, differed with the ruling of the territorial court. The federal supreme court thereupon reversed the judgment of the territorial court, in deference to the decision of the state court. See, also, Suydam v. Williamson, 24 How. 427, and Fairfield v. County of Gallatin, 100 U. S. 47. For the reasons given, the motions for a rehearing must be granted.

We come now to the question whether, if the Nichols law is valid under the Ohio constitution, the demurrers to the bills must be sustained, and the injunction dissolved. The validity of the law under the federal constitution cannot be seriously impeached. The only question is whether the facts averred in the bill do not make a case for enjoining the defendant appraisers, on the ground that their assessment is not in accordance with the Nichols law, as it is construed by the state supreme court. In the opinion already rendered in these cases (61 Fed. 463) it was said:

"Certain it is that courts will not permit injustice to be done to a class of taxpayers by a law which is so worded as to mean one thing to the courts when its validity is attacked, and another thing to the taxing officers when they come to enforce it. Either the law means what the officers construe it to mean, and its validity is to be tested on that construction, or they are to be enjoined from enforcing it except as the courts shall construe it."

This question has not been argued in the light of the supreme court decision, and I will hear counsel on Saturday, November 10th, at 10 o'clock, if they desire to be heard. The clerk will make the proper entries, setting aside the decrees pro confesso, and granting the motion for a rehearing.