CITY OF SIOUX FALLS et al. v. FARMERS' LOAN & TRUST CO. et al.

FARMERS' LOAN & TRUST CO. et al. v. CITY OF SIOUX FALLS et al.

(Circuit Court of Appeals, Eighth Circuit. March 31, 1905.)

Nos. 2,128, 2,130.

1. MUNICIPAL CORPORATIONS—WATERWORKS FRANCHISE—COMPETITION—IMPLIED CONTRACT.

The grant of a franchise by a municipal corporation to a water company to furnish water does not of itself raise an implied contract that the city will never do any act by which the value of the franchise granted may in fact be reduced.

2. SAME—EXCLUSIVE GRANT—CONSTRUCTION.

A contract by a city, granting "the exclusive privilege" of laying water pipes for public use in the highways of the city to K., and containing a provision that it was agreed that the contract should remain in full force for 20 years from a specified date, with the privilege to the city of purchasing the waterworks from K., his successors or assigns, after the expiration of 10 years, etc., did not constitute an implied renunciation of the city's power to construct and maintain waterworks itself, after the expiration of the 20-year period.

3. SAME—VESTED RIGHTS—CONTRACTS—STATE STATUTES—CONSTRUCTION—FEDERAL COURTS—INDEPENDENT JUDGMENT.

Where, in a suit to restrain a city from constructing and operating waterworks, complainant's rights were acquired under a municipal contract, and not by virtue of any constitutional or statutory provision, complainant was not entitled to the independent judgment of the federal court on the construction of a constitutional provision of the statute of the state with reference to the power of the city to increase its indebtedness for the purpose of constructing such waterworks.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Constitutional Law, § 43.]

4. SAME.

It was immaterial that a decision of the highest court of the state construing such Constitution and statutes to authorize the city to construct and maintain such waterworks was filed pending the suit in the federal court.

5. SAME—GENUINE CONTROVERSY—REVIEW.

Where a decision of the highest court in the state, construing the state Constitution and laws with reference to a municipal corporation's power to incur indebtedness for waterworks, was urged as conclusive on the federal courts, the latter would not review an objection that the state action did not involve a genuine controversy, but was a friendly suit to obtain a favorable interpretation of the Constitution to permit the issuance of water bonds.

[Ed. Note.—State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.

6. SAME—OBJECTIONS.

Where the validity of an alternative submission of the question whether a city should issue bonds for the "construction or purchase" of a system of waterworks was in issue in a suit brought in the state courts to restrain the city from proceeding under such election, and a final judgment in favor of the city was affirmed on appeal to the state Supreme Court, such decision was conclusive on the federal courts against the validity of an objection there to the alternative submission of such question.

136 F.—46

Appeal from the Circuit Court of the United States for the District of South Dakota.

For opinion below, see 131 Fed. 890.

Hosmer H. Keith and R. H. Warren, for city of Sioux Falls et al.

J. H. Gates, Park Davis, C. O. Bailey, and Bartlett Tripp (W. H. Lyon, D. T. Watson, J. H. Voorhees, and R. F. Wendel, on the brief), for Farmers' Loan & Trust Company et al.

Before VAN DEVANTER, Circuit Judge, and PHILIPS and RINER, District Judges.

RINER, District Judge. These cases are cross-appeals from a decree entered by the Circuit Court of the United States, for the District of South Dakota. A bill in equity was filed in the Circuit Court November 30, 1901, by the Farmers' Loan & Trust Company, to enjoin the city of Sioux Falls and its officers from proceeding to construct a system of waterworks in pursuance of an ordinance of the city to that effect, and from issuing bonds for the purpose of enabling the city to construct such waterworks. One W. S. Kuhn, a citizen of the state of Pennsylvania, and the Sioux Falls Water Company, a corporation organized under the laws of the territory of Dakota, and the South Dakota Water Company, a corporation organized under the laws of the state of South Dakota, were also made parties defendant. To this bill the South Dakota Water Company, the Sioux Falls Water Company, and W. S. Kuhn, on the 31st of December, 1901, filed their joint and several answer, admitting the allegations of the bill, and also filed a cross-bill against the city of Sioux Falls, and its officers, their codefendants. March 25, 1902, the cross-bill was amended by making the complainant a party defendant thereto. The city and its officers filed demurrers to the original bill and to the cross-bill. The demurrers were subsequently overruled by the court, and the city and its officers then answered the original bill and cross-bill. October 16, 1903, the South Dakota Water Company, the Sioux Falls Water Company, and W. S. Kuhn, by leave of court, filed an amended and supplemental cross-bill, making the defendants named in the original cross-bill parties defendant. The complainant, the trust company, filed its answer to both the original and amended and supplemental cross-bills, admitting to be true all of the allegations and facts therein alleged. The city and its officers demurred to the amended and supplemental cross-bill. A motion for a temporary injunction, based upon the pleadings in the case, was filed, and the demurrer to the amended and supplemental cross-bill and the motion were argued and submitted at the same time. The demurrer was overruled and the motion for a temporary injunction was sustained. The city and its officers thereupon answered the amended and supplemental cross-bill, testimony was taken, and the case subsequently went to final hearing upon the pleadings and proofs, resulting in a decree perpetuating the injunction. From this decree the city and its officers appealed to this court; the

Farmers' Loan & Trust Company, the South Dakota Water Company, the Sioux Falls Water Company, and W. S. Kuhn filing a cross-appeal.

On the 9th of April, 1884, the city of Sioux Falls, then being a municipal corporation acting under a special charter granted by the Legislature of the territory of Dakota, empowering it to construct and maintain waterworks and make all needful rules and regulations concerning the distribution and use of water supplied by such waterworks, and to make all contracts necessary to the exercise of its corporate powers, entered into a contract in writing with one W. S. Kuhn, of Pittsburg, Pa., his associates, successors, and assigns, for the construction of a system of waterworks, within the city of Sioux Falls, for the purpose of supplying the city and its inhabitants with water. The contract granted to Kuhn "the exclusive privilege of laying water pipes for public use beneath the surface of the highways of said city, with all necessary facilities and privileges for laying and repairing said water pipes, from time to time, as may become necessary." In consideration of this privilege, Kuhn agreed, for himself and his associates, successors, and assigns, under the penalty of forfeiting all rights under this agreement, to repair all damages accruing to the surface of the highways by reason of laying and repairing water pipes, and "to furnish to every citizen requiring it, within the limits of their occupancy of said highways, a constant and sufficient supply of pure water for ordinary house use, upon condition of such citizen or citizens paying to him, the said party of the second part, his associates, successors, and assigns, quarterly in advance, of the yearly charges for water privileges at rates not exceeding those at present charged in Kansas City, Mo., Council Bluffs, Iowa, Quincy, Ill., and Lincoln, Neb.," and also to erect, at once, a line of water pipes to be placed in the streets of the city, and to maintain in good repair 40 fire hydrants, of the kind known as "double delivery," to have the capacity specified in the contract. Paragraph 9 of the contract contained the following provision:

"It is further understood and agreed by the parties to this contract that the same shall continue in full force and effect for and during the period of twenty years from April 9, 1884, with the privilege, for the party of the first part, to purchase this waterworks from the party of the second part, his successors and assigns, on the expiration of ten years, by appraisement of three persons, one elected by the party of the first part, another by the party of the second part, and the third chosen by the two thus named, and, if not purchased then, the same privilege is granted at each successive five years."

Kuhn, his associates, successors, and assigns, so far as this record discloses, and as was found by the Circuit Court, have complied with all the obligations of the contract on their part, and the city has received its supply of water for public purposes and for the use of its inhabitants, as provided in the contract. The record shows that this system of waterworks had been enlarged from time to time, since the date of the contract, until, at the date of the decree, it represented an expenditure of approximately $481,-000. On the 22d of July, 1885, Kuhn assigned and transferred his

contract and the waterworks plant constructed by him thereunder to the Sioux Falls Water Company, and on the 30th of June, 1890, the last-named company sold and assigned the contract and waterworks plant to the South Dakota Water Company, since which date the South Dakota Water Company has been in possession of and has been operating the plant. On the 1st of July, 1890, the South Dakota Water Company executed and delivered to the Farmers' Loan & Trust Company its trust deed to secure the bonds of said water company, which were issued and certified by the trustee under the trust deed, and sold, as the record tends to show, in an amount approximating $290,000, which bonds were payable on the 1st of July, 1910. The city of Sioux Falls, since March 6, 1890, has been a municipal corporation, organized and existing, under the general law of the state of South Dakota for the incorporation of cities, as a city of the first class. The act of March 6, 1890, authorized a city of the first class to levy and collect taxes for general and special purposes on real and personal property, to borrow money on the credit of the corporation for corporate purposes, and to issue bonds therefor in such amounts and forms and on such conditions as it shall prescribe, not to exceed in the aggregate 5 per centum of the value of the taxable property therein; the valuation to be ascertained by the last assessment for state and county taxes previous to incurring the indebtedness. It further provides that no bonds shall be issued, either for general or special purposes, unless at an election after 20 days' notice in a newspaper published in the city, stating the purpose for which the bonds are to be issued and the amount thereof, and then only when the legal voters of the city by a majority shall determine in favor of issuing the bonds. It also authorized the city to construct and maintain waterworks, and make all needful rules and regulations concerning the distribution and use of water; to purchase, erect, lease, rent, manage, and maintain a system, or part of a system, of waterworks and hydrants for the supply of water or fire apparatus that may be used in the prevention or extinguishment of fire, and to pass all ordinances, penal or otherwise, as shall be necessary for the full protection, maintenance, management, and control of the property so leased, purchased, or erected; to pass all ordinances and rules, and to make all regulations, proper or necessary to carry into effect the powers granted to the cities.

Section 4 of article 13 of the Constitution of the state of South Dakota, as originally adopted, contains this provision:

"The debt of any county, city, town, school district or other subdivision shall never exceed five per centum upon the assessed value of the taxable property therein. In estimating the amount of indebtedness which a municipality or subdivision may incur, the amount of indebtedness contracted prior to the adoption of this Constitution shall be included."

At the general election in November, 1896, this section of the Constitution was amended by adding thereto the following proviso:

"Provided, that any county, municipal corporation, civil township, district or other subdivision may incur an additional indebtedness not exceeding ten per centum upon the assessed value of the taxable property therein for the

purpose of providing water for irrigation and domestic uses. Provided, further, that no county, municipal corporation or civil township shall be included within any such district or subdivision without a majority vote in favor thereof of the electors of the county, municipal corporation or civil township, as the case may be, which is proposed to be included therein, and no such debt shall ever be incurred for any of the purposes in this section provided, unless authorized by a vote in favor thereof of a majority of the electors of such county, municipal corporation, civil township, district or subdivision incurring the same."

In 1902 the same section of the Constitution was again amended to read as follows:

"Sec. 4. The debt of any county, city, town, school district, civil township or other subdivision shall never exceed five (5) per centum upon the assessed valuation of the taxable property therein for the year preceding that in which said indebtedness is incurred. In estimating the amount of the indebtedness which a municipality or subdivision may incur, the amount of indebtedness contracted prior to the adoption of the Constitution shall be included. Provided, that any county, municipal corporation, civil township, district or other subdivision may incur an additional indebtedness not exceeding ten per centum upon the assessed valuation of the taxable property therein for the year preceding that in which said indebtedness is incurred, for the purpose of providing water and sewerage for irrigation, domestic uses, sewerage and other purposes; and provided, further, that no county, municipal corporation, civil township, district or subdivision, shall be included within such district or subdivision, without a majority vote in favor thereof of the electors of the county, municipal corporation, civil township, district or other subdivision, as the case may be, which is proposed to be included therein, and no such debt shall ever be incurred for any of the purposes in this section provided, unless authorized by a vote in favor thereof by a majority of the electors of such county, municipal corporation, civil township, district or subdivision incurring the same."

An act of the Legislature, approved March 6, 1899 (Laws 1899, p. 62, c. 53), provided as follows:

"Section 1. That there is hereby granted to cities of the first class the right and power to issue bonds for the purpose of constructing, equipping, maintaining and operating or purchasing a system of waterworks for the purpose of providing water for domestic purposes; provided, that no such city shall be authorized to issue bonds or to incur any indebtedness or liability of any kind for any such purpose in excess of ten per centum upon the assessed value of the taxable property of such city, according to the last preceding assessment before the issuance of such bonds.

"Sec. 2. The city council of any such city may, by resolution passed by a majority of the aldermen elect at any regular meeting of such city council, or special meeting called for that purpose, call a special election and submit the question of the issuance of such bonds to the electors thereof. Such resolutions shall set forth: The amount of bonds to be issued, the maximum rate of interest they shall bear, the length of time they shall run, and the purpose for which they are to be issued. Such election shall be advertised as now provided by law for the calling of special elections in such cities. The ballots to be voted at all elections under this act shall read as follows: 'In favor of the proposition of issuing bonds to the extent of —— dollars, for the purpose of providing water for domestic uses.' 'Against the proposition of issuing bonds to the extent of —— dollars, for the purpose of providing water for domestic uses.' Such elections shall be conducted and the votes cast thereat shall be counted, returned and canvassed in such manner as is now provided by law for elections in such cities; provided, that a majority of the electors of such city shall be determined by the vote cast for mayor of the city at the last preceding election for such officer. If a majority of the electors of such city shall cast their vote in favor of the issuance of such bonds, the city shall, through its proper officers, without further act, be

authorized to issue such bonds to the amount voted, and to sell and negotiate the same.

"Sec. 3. All bonds authorized by this act shall run not more than twenty years from the date of their issuance and shall bear interest at not to exceed five per cent. per annum, payable annually or semi-annually as the city council may provide, and principal and interest shall be payable at such place as may be fixed by the city council; such bonds shall be signed by the mayor and attested by the city auditor and sealed with the seal of such city, and shall be sold at not less than the par value and accrued interest to the highest bidder after notice of such sale has been published once in each week for three successive weeks in a daily newspaper, if there be one published in such city, and if not, then in a weekly newspaper published in the city where such bonds shall be issued, and in such other newspapers and places as the council may deem advisable.

"Sec. 4. All acts and parts of acts in conflict with the provisions of this act are hereby repealed."

In October, 1901, the mayor and city council of the city of Sioux Falls passed the following ordinance and resolution:

"An Ordinance declaring it necessary to call a special election for the purpose of submitting to the legal voters of the city of Sioux Falls the question whether bonds shall be issued for the purpose of constructing, equipping, maintaining and operating or purchasing a system of waterworks and the mode of conducting the same.

"Be it resolved by the city council of the city of Sioux Falls:

"Section 1. That a special election be held on Tuesday, November 5, A. D. 1901, for the purpose of submitting to the legal voters of the city of Sioux Falls, South Dakota, the question whether the said city of Sioux Falls shall issue its bonds to the amount of $210,000 for the purpose of constructing, equipping, maintaining and operating or purchasing a system of waterworks for the use and benefit of said city for providing water for domestic uses.

"Sec. 2. The question submitted to the legal voters of said city as provided in section 1 shall be as follows: Shall the city of Sioux Falls issue its bonds to the amount of $210,000 for the purpose of constructing, equipping, maintaining and operating or purchasing a system of waterworks for the uses and purposes of said city and for providing water for domestic uses.

"Sec. 3. Said election shall be conducted and the ballots therefor prepared and the voting for or against said proposition shall be in the same manner as in the case of regular annual elections in said city, and the votes shall be canvassed and counted and the result declared in the same manner as for said elections so held at the regular annual election in said city and all rules and regulations prescribed by statute relative to the manner of voting and declaring the result and canvassing the vote shall be in the same manner as prescribed by statute in the case of regular annual election.

"Sec. 4. This ordinance shall be in force and take effect from and after its approval and publication."

The resolution is as follows:

"Be it resolved by the city council of the city of Sioux Falls: That a special election be held on the fifth (5th) day of November, A. D. 1901, for the purpose of submitting to the legal voters of the city of Sioux Falls, South Dakota, the question whether the said city of Sioux Falls shall issue its bonds for the purpose of constructing, equipping, maintaining and operating or purchasing a system of waterworks to provide water for domestic uses.

"Also resolved, that the amount of bonds to be issued shall be two hundred and ten thousand ($210,000) dollars, to run twenty (20) years from the date of their issuance, and shall bear interest not to exceed five per cent. per annum, and the purpose for which said bonds are to be issued is to construct, equip, maintain and operate or purchase a system of waterworks to provide water for domestic uses.

"Also resolved, that the question to be submitted at said special election and the ballots to be voted at said special election shall read as follows: 'In

favor of the proposition of issuing bonds to the extent of two hundred and ten thousand ($210,000) dollars for the purpose of providing water for domestic uses.' 'Against the proposition of issuing bonds to the extent of two hundred and ten thousand ($210,000) dollars for the purpose of providing water for domestic uses.'

"Also resolved, that said special election shall be conducted, and the votes cast thereat shall be counted, returned and canvassed, in such manner as is now provided by law in the case of regular annual elections."

Pursuant to the provisions of the resolution just quoted, notice of a special election was given, which, so far as it is material to the determination of this case, is in the following language:

"Be it resolved by the city council of the city of Sioux Falls: That notice is hereby given that a special election will be held on Tuesday, November 5th, A. D. 1901, for the purpose of submitting to the legal voters of the city of Sioux Falls, South Dakota, the question whether the said city of Sioux Falls shall issue its bonds to the amount of two hundred and ten thousand ($210,000) dollars to run twenty (20) years from the date of their issuance and to bear interest not to exceed five (5) per cent. per annum, said bonds to be issued for the purpose of constructing, equipping, maintaining and operating or purchasing a system of waterworks to provide water for domestic uses. The question to be submitted at said special election and the ballots to be voted at said special election shall be as follows: 'In favor of the proposition of issuing bonds to the extent of two hundred and ten thousand ($210,000) dollars for the purpose of providing water for domestic uses.' 'Against the proposition of issuing bonds to the extent of two hundred and ten thousand ($210,000) dollars for the purpose of providing water for domestic uses.' "

As provided in the notice, a special election was held in the city of Sioux Falls on November 5, 1901, at which election 1,184 votes were cast in favor of the proposition of issuing bonds to the extent of $210,000 for the purpose of providing water for domestic uses, and 313 votes were cast against said proposition; and in June, 1903, $210,000 of the bonds of the city were issued and sold to one Joe Kirby, who subsequently sold them, or some of them, to other parties. At the date of the decree the city had expended in the construction of the proposed water plant for itself approximately $150,000. The record shows, and the Circuit Court found, that the assessed valuation of property subject to taxation in the city of Sioux Falls for the year 1901, was $2,510,671; for the year 1902, $2,739,598; and for the year 1903, $3,481,988—and that the indebtedness of the city in the year 1903, and at the time the bonds were issued by the city, was $391,000.

It is alleged in the bill that the effect of the proceedings taken by the city for the purpose of acquiring and building a water system of its own would be to impair the obligation of the contract entered into between the city and Kuhn, in violation of the provisions of section 10 of article 1 of the Constitution of the United States, and that the proceedings taken by the city in this behalf would amount to taking the property of the complainant, the South Dakota Water Company, without due process of law, in contravention of the provisions of article 14 of the Constitution of the United States, and would damage its property for public use without just compensation, in violation of section 13, art. 6, of the Constitution of South Dakota. It is also averred that the city had no power, under the constitution of South Dakota, to issue bonds and build

waterworks, and was by the Constitution prohibited from so doing by reason of the fact that the assessed valuation of the taxable property of the city was less than $2,408,328, and that the total aggregate indebtedness of the city was in excess of $361,000, or in excess of 15 per cent. of the total assessed value of the taxable property of the city, and by reason thereof the city was without power to issue the bonds. It is further averred that a majority of the electors of the city did not vote in favor of the proposition to issue bonds in the sum of $210,000 to provide water for domestic uses; that the number of electors in said city on November 5, A. D. 1901, was greatly in excess of the number of qualified electors who voted for mayor at the last preceding election, and in excess of 2,370; that the act of the Legislature, in providing that a majority of the electors of the city shall be determined by the votes cast for mayor of the city at the last preceding election, was in violation of section 4 of article 13 of the Constitution of the state of South Dakota, and void; and that by reason thereof the action of the city in calling and holding the election, and the ordinance and resolution in relation thereto, were null and void.

The amended and supplemental cross-bill, in addition to the matters alleged in the original cross-bill, set out the proceedings of the city in advertising and selling the bonds to Kirby, and the resale and delivery of the bonds by Kirby to parties named in the cross-bill, and charged that the sale and delivery of the bonds were fraudulent and colorable only. Kirby and the other purchasers of the bonds were not, however, made parties. The supplemental cross-bill also set out, as matter arising since the original cross-bill was filed, the amendment to section 4 of article 13 of the Constitution of South Dakota, adopted at the general election held in November, A. D. 1902.

That the grant of a franchise by a municipal corporation to a water company to furnish water does not of itself raise an implied contract that the grantor will never do any act by which the value of the franchise granted may, in the future, be reduced, is too well settled to require any extended discussion. Long Island Water Supply Company v. Brooklyn, 166 U. S. 685, 17 Sup. Ct. 718, 41 L. Ed. 1165; City of Joplin v. Southwestern Missouri Lighting Company, 191 U. S. 150, 24 Sup. Ct. 43, 48 L. Ed. 127; Helena Water Company v. Helena, 195 U. S. 383, 25 Sup. Ct. 40, 49 L. Ed. ——; Bienville Water Supply Company v. Mobile, 175 U. S. 109, 20 Sup. Ct. 40, 44 L. Ed. 92; Id., 186 U. S. 212, 22 Sup. Ct. 820, 46 L. Ed. 1132. In Skaneateles Water Company v. Skaneateles, 184 U. S. 354, 22 Sup. Ct. 400, 46 L. Ed. 585, it is said:

"Such a contract would be altogether too far-reaching and important in its possible consequence in the way of limitation of the powers of the municipality, even in matters not immediately connected with water, to be left to implication."

While it is conceded in this case that the city had no power to grant a perpetual exclusive franchise for the privilege of laying water pipes for public use beneath the surface of the highways of the city, yet it is insisted that the word "exclusive," used in the con-

tract, must be construed as having the effect of an agreement on the part of the city not to construct and maintain a system of waterworks in competition with the water company. In discussing this branch of the case, the Circuit Court said:

"The word 'exclusive' in the contract between the city and W. S. Kuhn is insufficient to raise the implication that the city, by the use of said word, thereby agreed to renounce its power to construct waterworks itself; because (1) such is not the ordinary meaning of the word; (2) because it is conceded that under the law the word 'exclusive,' if given its usual interpretation, would render the exclusive feature of the contract void; (3) because the express provision of the contract of the city to take water for a term of years raises the contrary implication that after the expiration of that 20 years both parties intended that the city should be free to exercise its power to construct and maintain waterworks, or to obtain its water in any other lawful way."

We concur in this view. It is difficult to see the force of the contention that, on account of once making a contract with the plaintiff for 20 years, the city irrevocably bound itself by an implied contract never to construct and maintain a waterworks system of its own. While it is doubtless true that the erection of such plant by the city will render the property of the water company less valuable, yet the city was not bound by the contract to refrain from exercising its power to construct and maintain waterworks after the expiration of the 20-year period provided in the contract. The contract by its terms ceased to have effect after April 9, 1904, and the subsequent construction and operation of waterworks by the city for its own benefit and the benefit of its citizens would not, we think, be a violation of any of the express or implied provisions of the contract. The city undoubtedly had the power, by an express contract, to renounce its authority to construct and maintain waterworks itself during the time which it would be proper and lawful to grant the privilege to a third party. Walla Walla City v. Walla Walla Water Company, 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341.

Recognizing this rule, the city treated the contract as a binding contract upon it for 20 years. In its answers, both to the bill and cross-bill, it is alleged that the city had no intention of operating the system of waterworks which it proposed to build until after the expiration of the contract between the city and Kuhn; and for the full term of 20 years both the city and the water company have performed their several obligations under the contract. The Circuit Court, however, held that, as the city had an existing indebtedness, at the time it issued its bonds for the construction of waterworks, of nearly 15 per cent. of the assessed valuation of taxable property in the city for the year 1902, it had no power to incur this additional indebtedness, and therefore no power to construct and maintain a system of waterworks. This conclusion seems to have been based: (1) Upon the construction of the Constitution of the state of South Dakota to the effect that the 10 per cent. allowed for water purposes was to be computed in addition to the 5 per cent. allowed for general purposes only, and not in addition to all other indebtedness; (2) upon the view that the adoption of the amend-

ment to the Constitution operated to nullify the election held in November, 1901, under the same section of the Constitution as amended in 1896, and that the amendment of 1902 operated to repeal the statute of 1899 authorizing the issuance of bonds and providing for holding the election, and, further, that after the adoption of the amendment of 1902 additional legislation and a new election were necessary before the bonds could be issued; (3) upon the view that at the election held in November, 1901, the proposition for the issuance of bonds was submitted to the electors in the alternative— that is to say, as to whether bonds should be issued for the purpose of constructing, equipping, maintaining, and operating, "or" purchasing, a system of waterworks.

These propositions, we think, simply invite a consideration of the Constitution and laws of the state of South Dakota, and fall within the general rule that the construction adopted by the highest court of the state of the provisions of its Constitution and laws is binding upon the federal court as a decision upon a matter of purely local law and not presenting a federal question.  Randall v. Bringham, 74 U. S. 523, 19 L. Ed. 285; Elmwood v. Marcy, 92 U. S. 289, 23 L. Ed. 710; Wade v. Travis, 81 Fed. 742, 26 C. C. A. 589; Adams Express Co. v. Ohio, 165 U. S. 194, 17 Sup. Ct. 305, 41 L. Ed. 683.  That the Circuit Court considered these questions as questions of local law is apparent, for in the course of its opinion, found in the record, it is said:

"Our conclusion is that, if the city was lawfully authorized under the Constitution and statutes of the state of South Dakota to construct and maintain its own waterworks in the way it threatens and was proceeding to accomplish this end, then neither the franchise or privilege granted to Kuhn and his assigns, nor any of the provisions of the city's contract with him, nor the investment made thereunder and its threatened loss, furnish any tenable ground to invoke the aid of a court of equity to prohibit the city from constructing and operating its own waterworks."

In the case of Wells v. City of Sioux Falls, 94 N. W. 425, decided April 7, 1903, the Supreme Court of South Dakota had before it the questions now under consideration, and, in construing section 4 of article 13 of the Constitution of the state, held, in substance, that the power to incur a 10 per cent. indebtedness for providing water, when authorized by a majority of the electors, was conferred, regardless of existing indebtedness for other purposes, and that the bonds of the city would, if sold, not be invalidated because of the constitutional limitation upon municipal indebtedness; and it was further decided in that case that this section of the Constitution, as amended in 1902, was not amended in any respect which affected the questions so determined.  This decision must, we think, be held to be controlling in this court.

The Circuit Court, while admitting the general rule, refused to follow this decision of the Supreme Court of South Dakota, for the reason, as stated in its opinion:

"In the case at bar, the rights of the complainant and the water company became vested long prior to the decision in the Wells Case, and the original bill and original cross-bill were filed long prior to the commencement of, or decision in, the Wells Case; and we are bound in this proceeding to exer-

cise our own independent judgment as to the meaning of the constitutional provisions in question."

We are unable to concur in this conclusion. The water company acquired its rights under the Kuhn contract, and not by virtue of the section of the Constitution construed by the Supreme Court of the state, limiting the indebtedness of municipal corporations. A vested right, as we understand it, which will entitle the holder of such right to the independent judgment of the federal court upon the construction of a constitutional provision or the statute of a state, must be a right acquired under and by virtue of the Constitution or the statute. In other words, the Constitution or statute must have entered into the contract or transaction and be necessary to the support of the right. No question is here made in regard to the organization of the city or its powers as a municipal corporation; neither is any question raised or to be decided with reference to the right of the water company to be a corporation. If the decision of the Supreme Court of South Dakota had been made with reference to the special statute passed by the Legislature organizing the city of Sioux Falls, pursuant to which the Kuhn contract was made and while that contract was in force, then the distinction which the Circuit Court sought to draw might be well founded; but here the only contract between the city and the water company expired before the decision by the Circuit Court, and the contract was not entered into with reference to the constitutional provision in question, nor did the water company acquire its property with reference to such provision. We think there is no necessary connection between the constitutional provision and the transactions relied upon by the Circuit Court to establish a vested right which would entitle the water company to the independent judgment of the federal court upon the construction of the statutes of the state. Neither do we think that the fact that this suit was pending at the time the decision of the Supreme Court was rendered takes the case out of the general rule that the decision of the highest court of the state is binding upon the federal court upon questions of local law. The decision of the state court was rendered before the amended pleadings were filed and long prior to the hearing and decree in this case.

In the case of Western Union Telegraph Company v. Poe (C. C.) 64 Fed. 9, Judge Taft said:

"The case before the court, though the court has overruled a demurrer to the bill, on the ground that the Nichols law is invalid, is nevertheless still pending in court, and no final decree has been entered therein. It seems to me manifest that it is the duty of this court to reverse its former ruling, and make it harmonious with that of the tribunal which has ultimate authority on the subject."

Judge Taft, in a former decision in that case, had overruled a demurrer to a bill in equity, upon the ground that the state statute, authorizing an assessment, was void because in conflict with the Constitution of the state of Ohio. When this decision was announced, the statute had not been construed by the Supreme Court of the state. Subsequent to that decision, and before the answers

were filed in the case, the validity of the statute under the Constitution of Ohio was sustained by the Supreme Court of that state. Judge Taft thereupon granted a rehearing and sustained the demurrers of the defendants to the bill, upon the ground that the decision of the Supreme Court as to the construction of the state statute and its validity under the Constitution of Ohio was conclusive upon the federal courts.

It was suggested at the argument that the case of Wells v. City of Sioux Falls might be characterized as a friendly litigation for the purpose of obtaining the opinion of the Supreme Court as to the proper interpretation to be placed upon section 4, and also for the purpose of having an interpretation placed upon it which would be favorable to the issuance of the bonds. Whether or not that be true, it is not within the province of this court to determine. In the case of Adams Express Co. v. Ohio, 165 U. S. 219, 17 Sup. Ct. 308, 41 L. Ed. 683, in discussing a similar question, the Chief Justice said:

"It is suggested that the decision of the Supreme Court of Ohio should not have been followed, because the case in which it was announced did not involve a genuine controversy, but was prepared for the purpose of obtaining an adjudication, and, under the circumstances, ought not to have been considered by that court. But it was for that tribunal to pass on this question, and, as it entertained jurisdiction and delivered a considered opinion, which appears in the official reports of the court, as its judgment of the validity of the Nichols law under the Constitution of the state of Ohio, it is not within our province to review its determination in that regard."

It was also insisted at the argument that the election authorizing the issuance of the bonds by the city was void, because two separate and distinct propositions were submitted to the voters as one. We do not so understand this record. The city council had the power, under the general incorporation act, to construct or purchase waterworks in its discretion, without submitting the question to the electors, provided it could do so within the 5 per cent. limit of indebtedness fixed by the Constitution and general incorporation act. Because the city was indebted in excess of the 5 per cent. limit would not, in our judgment, destroy the power of the council to purchase or construct waterworks. Its only effect would be to render the power inoperative for want of means. The amendment to the Constitution of 1896 provided a method of securing the amount necessary by permitting additional indebtedness to be incurred for the special purpose of "providing water for domestic use." It does not in any way limit the discretion or power of the city council as to the choice of means by which the water supply should be provided. By the statute of 1899 cities of the first class are given power to incur such additional indebtedness in the form of negotiable bonds for the purpose of providing water for domestic use, either by the construction or purchase of a system of waterworks. The question was submitted in the exact language of the statute, and the sole proposition submitted to be voted upon was whether or not the city should issue bonds to the amount of $210,000 for the purpose of providing wa-

ter for domestic use. Nothing is said in the statute about submitting to the electors the proposition whether the city shall construct or purchase a system of waterworks. That was a matter to be determined by the city council, under the powers conferred upon it, and with which the electors had nothing to do. However this may be, we think this question was necessarily involved in the decision of the Supreme Court of South Dakota in the case of Wells v. City of Sioux Falls, and, like the other propositions noticed, falls within the rule that the decision of the highest court of the state upon questions of local law is binding upon the federal court.

In paragraph 6 of the complaint in the Wells Case it is alleged:

"That on the 15th day of October, 1901, the city council of the city of Sioux Falls passed a resolution and ordinance providing for a special election to be held on Tuesday, November 5, 1901, for the purpose of submitting to the legal voters of the city of Sioux Falls the question whether the city of Sioux Falls should issue its bonds to the amount of two hundred and ten thousand dollars ($210,000) to run twenty years and to bear interest not exceeding five per cent. for the purpose of constructing, equipping, maintaining, and operating, or purchasing, a system of waterworks to provide water for domestic uses, and at said election so to be held it was provided that the question submitted and the ballots voted on should be in the following form, to wit: 'In favor of the proposition of issuing bonds to the extent of $210,000 for the purpose of providing water for domestic uses.' 'Against the proposition of issuing bonds to the extent of $210,000 for the purpose of providing water for domestic uses.' That pursuant to said ordinance a special election was held on Tuesday, November 5, 1901, at which said election the said city of Sioux Falls avers that the vote of the qualified electors of the said city was in favor of the proposition of issuing bonds to the extent of two hundred and ten thousand dollars for the purpose of providing water for domestic uses."

It was alleged in the answer of the city in that action that under the laws and Constitution of the state of South Dakota the city of Sioux Falls had the legal right to issue bonds to the amount of $210,000 for the purpose of constructing, equipping, maintaining, and operating, or purchasing, a system of waterworks to provide the city with water for domestic uses, and that it claimed this right under the election of November 5, 1901. The plaintiff in that case demurred to the answer, and the demurrer was overruled. The plaintiff elected to stand upon his demurrer, and a judgment was entered in favor of the defendant. The case was then taken to the Supreme Court of the state, where the judgment of the trial court was affirmed.

The other assignments of error were argued with distinguished ability by counsel, and have all been carefully considered by the court; but, in the view we have taken of this case, it becomes unnecessary to discuss them here.

The decree of the Circuit Court must be reversed, with directions to dissolve the injunction and to dismiss the original bill, the amended bill, the cross-bill, and amended and supplemental cross-bill, at complainant's and cross-complainants' cost.