[L. A. No. 273. In Bank.—January 18, 1898.]

P. W. MURPHY, Appellant; v. CITY OF SAN LUIS OBISPO, Respondent.

Bonds for Municipal Improvements—Construction of Statute—Election of Municipality as to Gold Coin.—Under the terms of the original act of March 19, 1889, providing for the issuance and sale of bonds of a city to pay the cost of municipal improvements authorized by the voters, the municipality was not required to designate the kind of money in which the bonds should be payable, and, in the absence of such designation, could at maturity elect to pay them in any lawful money; and the purpose of the legislature in the amendment of 1893, providing that such bonds "shall be payable in gold coin or lawful money of the United States," was not to require that the bonds should express that alternative, but to confer the power of election upon the municipality to make the bonds payable in gold coin only.

Id.—Mode of Holding Election—Provisions of Ordinance—Mandatory Requirement—Invalid Election. —An ordinance of a city designating the mode of holding an election for the issuance of bonds for municipal improvements, having been passed by virtue of the statute authorizing it, has the force of a statute, and is to be construed with the same effect as if its terms had been prescribed by an act of the legislature; and where the ordinance provides that "each voter shall indicate his wish by writing or causing to be written or printed 'yes' or 'no' on the right-hand margin on his ticket opposite the proposition on which he may desire to vote," such requirement is mandatory, and a disregard of it renders the vote nugatory; and where the ballots contained an improper notice printed upon them, "to vote for or against a proposition, place an 'X' in the square at the right,"

and more than two-thirds of the voters followed such direction, instead of following the direction given in the ordinance, the election is invalid.

ID.—ALTERNATIVE OF MAKING INTEREST PAYABLE ANNUALLY OR SEMI-ANNUALLY—SUBMISSION TO VOTERS.—It was not necessary to submit to the voters the alternative of making the interest on the proposed bonds payable annually or semi-annually, but it is sufficient that the ordinance states the times at which the interest shall be payable; and it is only the amount of the bonds and the rate of interest which constitute the indebtedness proposed to be incurred, and upon which the voters are to express their wishes.

APPEAL from a judgment of the Superior Court of San Luis Obispo County.    V. A. Gregg, Judge.

The facts are stated in the opinion of the court.

Graves & Graves, for Appellant.

W. H. Spencer, and T. M. Osmont, for Respondent.

H. E. Doolittle, City Attorney of City of San Diego, W. E. Dunn, City Attorney of the City of Los Angeles, H. T. Creswell, City Attorney of the City and County of San Francisco, Thomas McNulta, City Attorney of the City of Santa Barbara, Robert Y. Hayne, Delmas & Shortridge, Chickering, Thomas & Gregory, Rosenbaum & Scheeline, James A. Gibson, and Harry L. Titus, *Amici Curiae,* for option of city to make bonds payable in gold coin only.

Works & Works, and Works & Lee, *Amici Curiae, contra.*

HARRISON, J.—The board of trustees of the city of San Luis Obispo, having advertised for the sale of certain bonds of the city for the purpose of paying the cost of certain municipal improvements authorized by the voters under the provisions of the act of March 19, 1889 (Stats. 1889, p. 399), the plaintiff, a taxpayer of the city, brought the present action to enjoin the sale of the bonds and the levy and collection of any taxes for their payment, upon the ground that their issuance was illegal. The superior court rendered judgment in favor of the defendants, and the plaintiff has appealed therefrom.    The notice of appeal states that an appeal is also taken from an order denying a new trial, but the record does not contain such order, nor does it appear therefrom that a new trial was ever asked for or denied.

The appellant presents three grounds upon which he contends that the issuance of the bonds is illegal, viz: 1. That the bonds are made payable in gold coin of the United States, instead of being made "payable in gold coin or lawful money of the United States"; 2. That at the election upon the question of their issuance the votes were not cast in accordance with the terms of the ordinance by which the question was submitted; 3. That the question whether the interest on the bonds should be paid annually or semi-annually was not submitted to the voters.

1. Section 6 of the act of March 19, 1889 (Stats. 1889, p. 401), provides: "All municipal bonds for public improvements issued under the provisions of this act shall be of a character of bonds known as serials, and shall be payable in the manner following [providing for the denominations of the bonds, and that one-twentieth of the issue must be paid in each year, but making no provision in reference to the times for the payment of interest]. Such bonds may be issued and sold by the legislative branch of the city, town, or municipal corporation as they may determine, at not less than their face value, in gold coin of the United States," etc. This section was amended in 1893 (Stats. 1893, p. 61), making the first sentence to read as follows: "All municipal bonds for public improvements issued under the provisions of this act shall be of the character of bonds known as serials, and shall be payable in gold coin or lawful money of the United States, in the manner following"; and also directing that one-fortieth of the issue must be paid in each year, and also that the interest "may be payable annually or semi-annually."

The notice under the ordinance calling the special election for the purpose of authorizing the issuance of the bonds in question stated: "The character of said bonds will be what is known as serial, and will be payable in gold coin of the United States, in the manner following [providing for distributing their payment over a period of forty years]. The rate of interest to be paid on said bonds will be five per cent per annum." The ordinance creating the indebtedness, and providing for the issuance and sale of the bonds, which was passed subsequent to the election, provided: "The character of said bonds shall be what is known as serial, and the same shall be payable in gold coin of the United States, in the manner following"; and further pro-

vided: "Each of said bonds shall be dated the sixth day of January, 1896, shall bear interest at the rate of five per cent per annum from said date, and to each of said bonds shall be attached as many interest coupons as it may have years to mature, each coupon to be for one year's interest on the bond to which it is attached, one of which coupons on each and every of said bonds shall be payable on the sixth day of January, 1897, and one on the same day of said month of each succeeding year until all are paid."

Under the terms of the original act the municipality was not required to designate any kind of money in which the bonds should be payable, and, in the absence of such designation in the bonds, could at their maturity elect to pay them in any medium that might then be lawful money or legal tender. Whether the municipality had the power to designate in the bonds any specific kind of money in which they should be payable was an unsettled question. It had been held in *Judson v. Bessemer,* 87 Ala. 240, that the municipality possessed such power, while in *Woodruff v. State,* 66 Miss. 298, it had been held that such act was *ultra vires,* and that the bonds were void. The reversal of this case by the supreme court of the United States (*Woodruff v. Mississippi,* 162 U. S. 299) was upon a point which left the question undetermined by that tribunal. It has since been held by the supreme court of Kentucky in *Farson v. Board of Commrs.,* 97 Ky. 119, that under a statute authorizing a municipality to issue a bonded indebtedness, which is silent as to the kind of currency or money in which it is to be payable, the municipality may make the bonds payable in gold coin. Experience had shown that, if bonds are made payable in a currency of fluctuating value, they are less readily negotiated than if the lender or investor knows in advance the precise kind of money in which they will be paid. Under this condition of the law as it had then been expounded, and with the universal experience in financial transactions, and doubtless in consequence thereof, the legislature, in 1893, amended the statute by giving to the municipality the right to designate at the issuance of the bonds the specific kind of money in which they should be paid. It is to be assumed that the amendment was for the purpose of remedying some defect in the original act, but if the defect in the

original act was a want of power in the municipality to issue its bonds payable in any specific kind of money, as had been held by the supreme court of Mississippi, this defect would not be obviated if the statute required them to be "payable in gold coin or lawful money of the United States." In the absence of any limitation upon the mode of payment, they would be payable in any lawful money of the United States, and, as a provision in the bonds giving to the municipality the alternative of paying them in gold coin or in lawful money of the United States would create no obligation upon it to make the payment in gold coin, it follows that the "lawful money" in which they would be paid would be that kind which the municipality would elect at their maturity, and, consequently, the kind which at that date would have the least value. It cannot be held that the words "shall be payable in gold coin or lawful money of the United States" were inserted in the statute merely for the purpose of declaring that the municipality should have the option at the maturity of the bonds to pay them in gold coin, or in lawful money, since it needed no legislative declaration to give it that option. The fact that they were payable in money would itself confer upon it that privilege; and, as such a construction of the statute would destroy any efficacy in the amendment, it ought not to be given unless required by its terms. It is not so indicated in specific language, and, as its language will permit a construction by which the municipality may determine in advance whether the bonds shall be payable specifically in gold coin, or generally in lawful money of the United States, a consideration of the purposes of the statute and the objects to be effected by it justifies us in giving it this construction.

The purpose of the legislature in enacting the statute in question was to enable the municipalities of the state "to acquire or construct certain municipal improvements which the public interest or necessity might demand, the cost of which would be too great to be paid out of the ordinary annual income." Unless the bonds that are to be issued under the proceedings thus authorized can be negotiated, the municipality will be unable to acquire or construct the improvements, and the very purpose of the legislature will be defeated. The legislature must be assumed to have been familiar with the laws of trade and finance

—to have known that bonds payable in a fluctuating currency are less salable than if payable in gold coin. Guided by experience and the history of the last forty years, they were aware that obligations which were to run for forty years in the future would be subject to the contingencies of a depreciated currency, and that, in the light of this experience, capitalists and investors would decline to invest their money unless they could be assured that they would receive the value which they should give for the bonds. The bonds authorized by this act, when issued, become negotiable securities and the subject of daily traffic in the commercial world, and any provision in them that impedes their free negotiability destroys their value, and prevents the municipality from effecting a sale in accordance with the terms of the act. The requirement in the statute that the bonds shall be sold "at not less than their face value in gold coin of the United States" would prevent the sale of a single bond whose payment at maturity could be made at the option of the maker in such currency as it might then elect, and thus the very object of the statute would be destroyed. The recognized standard of value in this state is gold coin, and, as this is the only kind of money which the legislature has authorized to be received upon a sale of the bonds, and has required them to be sold for not less than their face value, it must be held that it was the intention of the legislature that they might be made payable in gold coin.

There is an additional consideration which lends weight to this construction of the intention of the legislature by this amendment. By an act passed March 15, 1883 (Stats. 1883, p. 370), certain incorporated cities were authorized to refund their indebtedness by issuing new bonds therefor. The form of the bond was prescribed by the statute and made payable in "dollars" without designating any kind of money. On the same day that the aforesaid amendment to the act of March 19, 1889, was passed, the legislature amended the act of March 15, 1883 (Stats. 1893, p. 59), by giving authority to those cities to refund their indebtedness and issue serial bonds therefor, to run for forty years, "principal and interest being payable in gold coin or lawful money of the United States"; and also providing that the bonds should be sold for not less than their face value "in

the same character of money in which they were payable." The provision in this statute that the bonds shall be payable in gold coin or in lawful money of the United States, as in the statute under consideration, and the further provision in that statute that they should be sold for their face value "in the same character of money in which they were payable," clearly indicates that the municipality should exercise its option for the mode of the payment, at the issuance of the bonds, and not at their maturity, and that the bonds themselves should be payable in the kind of money for which they were to be sold. The same provision in section 6 of the act under consideration, coupled with the provision that the bonds are to be sold for gold coin at not less than their face value, carries with it the same intention of the legislature that the bonds may be made payable in gold coin. (See Sutherland on Statutory Construction, secs. 284, 288.)

In the case of *Skinner v. Santa Rosa,* 107 Cal. 465, cited by appellant, the ordinance calling the election, as well as the notice of election, described the bonds as "payable in gold coin or lawful money of the United States," with interest payable "annually" at a place to be fixed by the city council, while the bonds which the council proposed to sell were made payable "in gold coin" with interest payable "semi-annually" in the city of New York, and it was held that the bonds in this form, not having been authorized by the voters of the city, would be invalid. Whether, if the ordinance had provided that the bonds should be issued "payable in gold coin," its approval by the voters would have authorized the issuance of such bonds, was not before the court for decision or discussed in its opinion. The only bonds which the voters had approved were to be "payable in gold coin or lawful money of the United States"; that is, as we have seen above, payable in such money as the city might elect at their maturity, and it was held that the city could not be made liable for bonds payable in gold coin, as that would impose upon it a burden which the voters had never authorized.

2. Section 2 of the act of March 19, 1889, provides that the ordinance calling a special election "shall fix the day on which such special election shall be held, the manner of holding such election, and the voting for or against incurring such indebtedness; such election shall be held as provided by law for holding

such elections in such city, town, or municipal corporation."
The ordinance in the present case stated:

"Sec. 6. The manner of holding said election shall be as fol-
lows: 1. As provided by law for holding elections in said city; 2.
As provided by the general election laws of this state, except
where such general laws may conflict with the state law for elec-
tions of the kind hereby called, or with this or any ordinance;
and 3. As provided for in this ordinance." It was further pro-
vided in this section of the ordinance: "Tickets must be of ordi-
nary election ticket paper, 6x12 inches; the heading of such tick-
ets must be: 'Bond Election, City of San Luis Obispo.' Each
proposition set forth in section 2 of this ordinance shall be voted
on separately, and must be printed on such tickets as follows:
1. Bonding for city water works, $90,000.00. 2. Bonding for
sewer improvements, $34,500.00. Each voter shall indicate his
wish by writing, or causing to be written or printed, 'yes' or 'no'
on the right-hand margin on his ticket, opposite the proposition
on which he may desire to vote." At the election which was held
under this notice more than two-thirds of the voters that voted
indicated their wishes by voting a ticket in the following form:

MUNICIPAL TICKET.

BOND ELECTION.

*City of San Luis Obispo.*

To vote for or against a proposition, stamp a cross (**X**) in the square at
the right.

|   |                                                                     |     |
|---|---------------------------------------------------------------------|-----|
| 1 | Bonding for City Water Works, <br> $90,000.00          YES.         | **X** |
| 2 | Bonding for City Water Works, <br> $90,000.00          NO.          |     |
| 3 | Bonding for Sewer Improvements, <br> $34,500.00          YES.       | **X** |
| 4 | Bonding for Sewer Improvements, <br> $34,500.00          NO.        |     |

and indicated their wishes in no other way than by stamping a
cross opposite the propositions on said ticket. Whether the
proposition to issue the bonds was legally adopted depends upon
whether the ballots thus cast should have counted in its favor.

The provisions of the Political Code which are applicable to
elections of officers are not by any statute made applicable to elec-
tions of the character under consideration, and we have not been

cited to any special statute on the subject governing elections in the city of San Luis Obispo. It will be observed that by the terms of the ordinance the general election law of the state is not applicable where it is in conflict with the mode pointed out in the ordinance, and that the provisions of the ordinance control unless they are in conflict with some of the provisions of the general law. It follows that the statutory provisions requiring the city to fix by its ordinance the manner of holding the election, and the voting for and against it, is the rule by which the voters are to act in voting upon the question. This ordinance, having been passed by virtue of the statute authorizing it, has the force of a statute, and is to be construed with the same effect as if its terms had been prescribed by an act of the legislature.

It is urged by the appellant that the manner of voting which was prescribed in the ordinance calling the election was mandatory upon the voters, and that as this manner was not observed the election was invalid. Whether the forms prescribed for holding an election are mandatory or directory, and whether their observance is essential to the validity of the election, depends upon the character of the acts prescribed. In *Tebbe v. Smith*, 108 Cal. 101, Mr. Justice Henshaw stated the rule as follows: "It is the rule that mandatory provisions for the holding of an election must be followed, or the failure will vitiate it, while the departure from the terms of a directory provision will not render it void, in the absence of a further showing that the result of the election has been changed, or the rights of the voters injuriously affected thereby; but the rule as to directory provisions applies only to minor and unsubstantial departures therefrom. There may be such radical omissions and failures to comply with the essential terms of a directory provision as will lead to the conclusive presumption .that the injury must have followed." In *Kirk v. Rhoades*, 46 Cal. 398, it was held that, if the requirements of the statute which it is within the power of the elector to control are willfully disregarded, his vote should be rejected; and in *Lay v. Parsons*, 104 Cal. 661, it was held that the specific directions to the voter as to the mode in which he shall mark his ballot are mandatory and cannot be disregarded. In the absence of any direction, the manner in which the voter is to indicate his wish

may be immaterial, so long as his wish can be ascertained; but when the mode of its indication has been prescribed by authority of law, the form becomes a matter of substance, and courts are not authorized to say that it may be disregarded, and that the wish of the voter may be determined by conjecture. Whatever the statute requires the form to be is mandatory. In the present case, it may be a reasonable conjecture that the votes cast in the above form were intended to be in favor of the issuance of the bonds, but it is still only a matter of conjecture. If the voters had drawn a line through the "yes," it might be supposed that they intended to vote against their issuance, but if, instead of drawing a line through the "yes," they had stamped an "X" directly upon it, it would be uncertain whether they intended in this mode to indicate an affirmative vote, or to have it counted as a negative. It is equally a matter of conjecture, though, perhaps, with less uncertainty, where the "X" has been placed at the side of the "yes" rather than upon it. Let it be supposed that, with the direction which was given in the ordinance for the mode of voting, five hundred ballots had been cast, of which one hundred were marked in this mode, one hundred with a line drawn through the "yes," one hundred with the line drawn through the "no," one hundred with the "X" stamped upon the "yes," and one hundred with the words "for the bonds" written upon the ticket. Could it be said that the board would be authorized to declare that the election had resulted in favor of the issuance of the bonds, or that there was anything more than conjecture as to the wishes of the voters? The only safe rule is to hold the specific directions to be mandatory, and that the manifest disregard of them by the voter renders his vote nugatory. The notice which was printed upon the tickets that were used by the voters, "To vote for or against a proposition, stamp an 'X' in the square at the right," was unauthorized and gave to the voters no right to disregard the manner of voting which was directed by the ordinance calling the election. That direction in the ordinance was clear and unambiguous, and it must be held that, as it was disregarded, the election was invalid.

3. It was not necessary that the alternative of making the interest payable annually or semi-annually should be submitted to the voters. Section 3 of the act requires the legislative body,

after the ordinance has been published two weeks, to publish a "notice of such special election, the purpose for which the indebtedness is to be incurred, the number and character of the bonds to be issued, the rate of interest to be paid, and the amount of the tax levy to be made for the payment thereof"; but makes no requirement with reference to the publication of the times at which the interest is payable. The indebtedness cannot be incurred without the assent of two-thirds of the qualified electors of the city voting at an election for that purpose (Const., art. XI, sec. 18); but it is not requisite under this provision, or the aforesaid statute, that the voters shall determine in the first instance whether the interest shall be paid annually or semi-annually. The amount of the bonds and the rate of interest constitute the indebtedness proposed to be incurred, and upon which the voters are to exercise their wishes; but, as the city council is to determine in the first instance the rate of interest which the bonds are to bear, it may also in the first instance determine whether the interest shall be payable annually or semi-annually. Its determination upon this point may be stated in the proposition to the voters as readily as the rate of interest. The ordinance herein stated in sufficient terms that the interest was to be paid annually.

·     The judgment is reversed.

Henshaw, J., Temple, J., Garoutte, J., McFarland, J., and Van Fleet, J., concurred.

BEATTY, C. J., concurring.—I concur. This case certainly reverses one point decided in *Skinner v. Santa Rosa,* 107 Cal. 465. But although the point was involved in that case, it was not essential to the conclusion reached, which was fully sustained upon other grounds. And since the decision of that point cannot have given rise to any claim of vested right, it ought to be set aside if erroneous. A comparison of the act of March 1, 1893, amending the act of March 15, 1883 (Stats. 1893, p. 59), with the act here in question, which was passed on the same day, is conclusive as to the sense in which that legislature used the expression "payable in gold coin or lawful money of the United States." The same phrase must mean the same thing in both acts, and the former act shows clearly that the bonds were to be made payable

specifically in gold coin or specifically in lawful money, and not in either at the option of the municipality.

This construction also accords with the object of the amendment, which, as shown by Justice Harrison, would have been defeated by any other construction.