## Percival, et al. v. City of Covington, et al.

(Decided April 29, 1921.)

### Appeal from Kenton Circuit Court.

1. Municipal Corporations—Creation of Indebtedness—Ordinances—Elections.—For the purpose of creating certain municipal debts, and issuing bonds therefor, section 3069, Ky. Stats., requires that before such is done the general council, or board of commissioners, must by ordinance submit the proposal to the voters for their approval, and in the ordinance must be stated the amount of the debt proposed to be incurred, the purpose or purposes of the incurrence of the debt and the sum necessary to be raised by taxation each year to pay the debt, and when the proposal is approved by the voters, then all other powers with reference to the mode of the creation of the debt and the mode of its payment is vested in the general council, or board of commissioners.

2. Municipal Corporations—Creation of Indebtedness—Elections.—Although it is unnecessary under section 3069, Ky. Stats., to submit to the electorate, anything, except the amount of a proposed debt, the purpose or purposes of its incurrence, and the sum necessary to be raised by taxation annually to pay the debt, yet, it is not unlawful, in the ordinance making the submission, to submit to the voters, the mode of the payment of the debt, and, if such is done, the provisions with regard thereto, are binding upon the submitting authority, as by a contract.

3. Municipal Corporations—Proposed Creation of Indebtedness—Elections.—When the proposal to create a municipal debt, must first be submitted to the voters for their approval, and it is approved by the required percentage of the electorate, the general council, or board of commissioners, cannot after the election, ignore any

material provision, as to the mode of creating or paying the debt, which was included in the submission, as without such provisions included, the assent of the voters has not been obtained to the incurrence of the debt, as without the inclusion of such provisions, the voters would have probably refused their assent.

JOHN L. RICH for appellants.

A. E. STRICKLETT for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HURT—Reversing in part and affirming in part.

The appellants, who as citizens and taxpayers of the city of Covington, sought by this action to enjoin the board of commissioners of the city from issuing and selling $250,000.00 of bonds of the city for the purpose of obtaining money to build an addition to the water works of the city. The grounds upon which the validity of the proposed issue of bonds is assailed, are as follows:

(1) The ordinance submitting the question to the qualified voters of the city was not advertised as required by section 3069 Ky. Stats.

(2) The purpose for which the bonds were to be issued was not sufficiently set out and defined in the ordinance by which the incurrence of the indebtedness was submitted to a vote of the electors and the authority to incur the indebtedness obtained.

(3) The incurrence of the proposed indebtedness is in violation of sections 157 and 158 of the Constitution.

(4) The bonds, as proposed to be issued and sold in accordance with an ordinance adopted after the election, do not contain a provision which was embodied in the ordinance by which the incurrence of the proposed indebtedness was submitted to the voters of the city, and which provision was as follows:

"The city of Covington reserves the right to fund all of the said bonds, at any interest paying time, at a lower rate of interest after the expiration of ten years from date of issue."

These contentions were all denied in the trial court and the petition was dismissed and from the judgment the plaintiffs have appealed. Neither of the contentions has any merit except the last one stated, and no further notice will be taken of them, but the fourth or last mentioned contention presents a serious ground for consideration

and requires a reluctant, but adverse, decision to the right of the commissioners to issue or to sell the bonds in the form now proposed.

Section 3069, Ky. Stats., which is a part of the charter of cities of the second class to which the city of Covington belongs, in so far as it is pertinent to the present controversy or necessary to be stated, provides as follows:

"The general council shall not expend any money in excess of the amount annually levied, collected or appropriated for any special object: Provided, if, in any year the general council shall deem it necessary to incur any indebtedness, the payment of which cannot be met without exceeding the income and revenue provided for the city for that particular year, it shall, by ordinance order an election by the qualified voters of the city to be held, to determine whether such indebtedness shall be incurred. Such ordinance shall specify the amount of indebtedness proposed to be incurred, the purpose or purposes of the same, and the amount of money necessary to be raised annually by taxation for an interest and sinking fund, as herein provided. Such ordinance shall be published for at least two weeks just preceding the election in the official newspaper in and for such city, or by posting written or printed copies thereof at three or more public places in such city, if there be no such official newspaper. Upon filing by the city of a certified copy of an ordinance ordering such an election with the county clerk of the county in which such city is located, thirty days prior to any regular election, it shall be the duty of the county clerk to cause to be printed upon the ballots, to be used in the city precincts of such county, at said election, the question of the issuance of bonds by said city as proposed by such ordinance. The expenses thereof shall be paid as other election expenses are paid. The election shall be held in the manner provided by general law for submitting public measures to a vote of the people, and shall be held at the same time and place and in the same manner and by the same officers as the regular election of that year. The votes on said question shall be canvassed and certified by the election officers in the same manner as votes canvassed in the regular election. It shall be the duty of the county board of election commissioners to canvass the returns of the election on said question, and certify the re-

sult thereof at the same time and in the same manner as the returns of the regular election.

"If upon the canvass of the votes at such an election, it appears that two-thirds of all the qualified voters of said city, voting on said question, shall have voted in favor of incurring such indebtedness the general council may incur such indebtedness and issue bonds of the city in evidence thereof, and it shall be the duty of the general council to pass an ordinance providing for the mode of creating such indebtedness and of paying the same."

It will and must be conceded, that, before the board of commissioners is authorized to incur an indebtedness for the city of Covington in the sum of $250,000.00 and to issue bonds of the city therefor, payable in the sum of $5,000.00 annually for a period of twenty years, and thereafter in the sum of $7,500.00 payable annually for a period of another twenty years, and all bearing interest at a rate not exceeding 6 per cent. per annum, payable semi-annually, until paid, under the provisions of the Constitution and the statute laws bearing upon the subject and considering the stipulated value of the taxable property of the city and its indebtedness, bonded and floating, and the rate of taxation allowed by law, it must receive authority to do so by the approval and assent of at least two-thirds of the qualified voters of the city, voting at an election held for the purpose of ascertaining whether the electorate approved or disapproved the incurrence of the debt, and the election for that purpose must be conducted in the manner provided by the statute quoted. Until the assent of the electorate has been obtained, the general council, or in the instant case the board of commissioners, is entirely without power to incur such an indebtedness on behalf of the city. A paragraph of the statute quoted prescribes the essential things which must be submitted to the voters at the election and which must be necessarily stated in the ordinance submitting the proposal to the voters, and this same paragraph prescribes the course to be followed in regard to the publication of the ordinance, its certification to the county court clerk, the preparation of the ballots to be used at the election, the time of the election, and the canvassing of the result, and these and similar provisions have been uniformly held to be mandatory, and without a substantial compliance with which the assent or approval of the electorate has not been consid-

ered to have been obtained.   Kash, et al. v. City of Jackson, et al., 159 Ky. 523; City of Covington, *ex parte,* 160 Ky. 146; Barry v. New Haven, et al., 162 Ky. 60; Hatfield v. City of Covington, 177 Ky. 124. It, thus, clearly appears that when the approval of the voters is sought for the incurrence of such an indebtedness by a municipality, the things which must necessarily be submitted to the electors by ordinance and their assent obtained therefor are as enumerated in the statute as follows: (1) The amount of the debt proposed to be incurred.   (2) The purpose or purposes of the incurrence of the debt, and (3) the sum of money which is necessary to be raised annually by taxation to pay the indebtedness.   The sum to be raised by taxation is the sum necessary to pay the interest on the bonds and to provide a sinking fund to liquidate them at maturity.   When the proposal to incur the indebtedness has been approved by two-thirds of the qualified voters of the municipality, who participate in the election, held by virtue of an ordinance, which submits to them for their approval, the creation of the debt, described by a statement of the above enumerated essential facts, all the other powers necessary to carry the proposition into effect with reference to the creation of the debt, its mode of creation and the mode of paying it, is conferred upon the general council or the board of commissioners, as is indicated, by the last paragraph of the statute quoted, in the following language there used: ''The general council may incur such indebtedness and issue the bonds of the city in evidence thereof, and it shall be the duty of the general council to pass an ordinance providing for the mode of creating such indebtedness and of paying the same.''   These powers may be exercised by virtue of an ordinance adopted after the election, and in so doing they must be exercised, of course, under the restrictions prescribed by the Constitution and statutes with reference to the rates of interest which the bonds shall bear, the maturity of them, etc.   Hence, it is clear that if the assent of the voters had been sought to the creation of the debt with only the conditions as to its creation and the mode of its payment, which are included in the bonds proposed to be negotiated, and the negotiation of which is sought to be enjoined, and the voters had assented thereto in the manner prescribed by the statute, there would have been no ground upon which to restrain the issual of the bonds, as it was not necessary for the ordinance to have contain-

ed nor to have submitted to the voters the condition, that the city should have the right to refund the debt at any interest paying time, after ten years from the date of the bonds, at a lower rate of interest than the bonds were bearing when the right to refund the debt should be exercised. Such a provision is one which the commissioners might have prescribed by an ordinance after the election, and is not one of the things which it was necessary to have submitted to the voters for their approval in order to secure authority to create a municipal indebtedness, as such a provision is one relating wholly to the mode of payment of the debt. While such a municipal debt with the concurrence of the voters could be created without the inclusion of a provision with regard to refunding the debt, as a condition of the obligation, the question for decision, here, is, when authority has been secured from the electorate for the creation of the debt by the solemn assurance to the voters, by the ordinance submitting the proposal to them, that when the debt was incurred, it should be subject to the condition, that the city should have the right to refund the debt at any interest paying time, which would be twice each year, after ten years had expired, from the date of the bonds and at the prevailing lower rate of interest, and such condition was thus necessarily one upon which the electorate assented to the creation of the debt, should the board of commissioners now be permitted to incur the debt free from such condition, and in a manner to deny the city the right which such provision of the ordinance guaranteed? There is no precedent in this jurisdiction which can be relied upon for the determination of this exact question, but the proposal is one which strikes the moral sense, at once, as wrong. While a proposal could have been submitted to the voters for the incurrence of the debt, without attaching to it such a privilege as the refunding provision provides, and if the voters approved, the debt could have been lawfully incurred and in that sense the inclusion of such a provision in the ordinance submitting the proposal, was unnecessary, but its inclusion was not unlawful and was one of the conditions upon which the voters gave their assent to incurring the debt at all, and without such assent it cannot be pretended that the board of commissioners have any authority to create the debt. It should be observed that the publication of the ordinance which submitted the pro-

posal to incur the debt to the voters, was the only notice
of the election which the voters had, or which the statute
provides, of the proposal to incur the debt, the amount of
it and the sum necessary to be raised by taxation annual-
ly to satisfy it, and this notice, provided that while the
debt would be incurred, it would be imposed with the
right of the city to refund it at a lower rate of interest,
if obtainable, after ten years, and it cannot be said that
such a right is of no value and of such immaterial char-
acter and consequence, that, it had no influence in secur-
ing the approval of the electorate. The commissioners
deemed it of consequence and materiality or else they
would not have included it in the ordinance and it is such
a provision as a business man in private affairs would
consider to be of value and worthy of consideration. In
fact it is not to be assumed that any material condition
attached to the right to incur such indebtedness by a
municipality and included in the ordinance which submit-
ted the matter to the approval of the voters was not in
the minds of the voters when making their decision and
influenced their decision to approve. Considering the
amount of the proposed debt and the fact that it will not
all be liquidated until the expiration of forty years, and
that the interest as provided in the ordinance might be as
high as 6 per cent. per annum, the advantage to the tax-
payers of a right to refund the debt at a lower rate of
interest after ten years, would be very considerable and
of such material character that it should not be disre-
garded. The voters having assented to the incurrence of
the debt only with the refunding privilege, as defined
in the ordinance, as a condition upon which the
debt was to be created, it cannot be said, that
they have ever assented or approved the creation
of the debt with such provision eliminated, as the
commissioners are now proposing to do. To hold
that the commissioners should now be permitted to
incur the indebtedness and to issue the bonds therefor
and eliminate the provision providing for the refunding
privilege, at a lower rate of interest, would be to hold
that advantages of the most seductive character could be
attached to the proposal to create a municipal debt in
the notice and advertisement which submits the matter to
the voters, and after the approval of the electorate is ob-
tained by their reliance upon the very advantageous con-
ditions to be attached to the debt, and without which they

would not have given their approval, could after the election be eliminated and disregarded, because the conditions were not such as were made necessary by the statute to be included in an ordinance submitting to a vote of the people a proposal to incur a debt by a municipality.

This court has held in several cases, that questions required by law to be submitted to the voters, by the legislative authorities of municipalities, were binding upon such authorities as by a contract. Scott v. Forrest, 174 Ky. 672; Blain Campbell, etc., v. Clinton County, 176 Ky. 396; Campbell v. Hamons, 177 Ky. 219; Lawrence County v. Lawrence Fiscal Court, 191 Ky. 45. In these cases, however, the questions involved related to the purposes of the proposed indebtedness, which was a fact required by the statute to be submitted to the voters, and for such reason, it may be insisted that the cases are not authorities upon the question involved, in the instant case, where it has reference to a matter, which was submitted to the voters, but, which the statute did not require to be submitted, in order to the creation of a valid municipal obligation. In other jurisdictions our attention has been called to three adjudications, which under a different state of facts have involved the question under determination. In Yesler v. City of Seattle, 25 Pac. 1014, the Supreme Court of Washington, held that a city council can submit to the voters only those matters directed to be submitted by the legislature; that, if the ordinance calling the election, submitted to the voters matters left by the statute to its discretion, the fact did not create a rule or contract under which the council would be required to negotiate the bonds, and that the actual negotiation of the bonds without reference to such provision in the ordinance would not be restrained at the suit of taxpayers, if the mayor and council were acting in good faith and had been unable to negotiate the bonds with such provisions included. The Texas Court of Civil Appeals held in Nalle v. City of Austin, 21 S. W. 375 that the terms of the submission to voters are binding upon the council, as a contract, but, this opinion was reversed upon appeal by the Supreme Court of Texas, which held that upon a question not required to be submitted to the voters, the council was not bound by an ordinance passed before the election, upon the theory that "the citizens, who voted at the election must be held to have known that the ordinance, which had been passed limiting the price was subject to

repeal by the council, which passed it.'' Upon the other
hand, the Supreme Court of California, in Skinner v.
Santa Rosa, 107 Cal. 464, repudiated both the conclusions
and reasoning of the Supreme Court of Washington, in
Yesler v. Seattle, *supra,* and held that a council was
bound to observe every provision of the submission,
whether required by statute or not, upon the theory, that
to hold otherwise would open the door to fraudulent sub-
missions, or for obtaining, without fraud, a grant of
power, that would otherwise be denied. The Supreme
Court of Appeals of West Virginia, in Lawson v. Kan-
awha County Court, 92 S. E. 786, approved the doctrine
enunciated by the California Court, in Skinner v. Santa
Rosa, *supra,* and criticised the conclusions reached in
Yesler v. Seattle, *supra.* We think the conclusions of the
court in Skinner v. Santa Rosa, and Lawson v. Kanawha
County Court are founded upon better reasons, than the
opinions holding to the contrary, and have the advantage
of being in accordance with the principles of good faith,
which should be exercised in such matters. In the in-
stant case, we do not mean to attribute any want of good
faith to the commissioners, who are proposing to create
the debt and negotiate the bonds, with the refunding priv-
ilege provided by the ordinance, under which the election
was held, and from which they acquired their authority,
eliminated; but the refunding right, although not neces-
sary under the statute to be included in the submission
to authorize a municipal debt, in the instant case it was
submitted; its submission was not prohibited by the stat-
ute and was not unlawful, and it is impossible to discern
why such a provision, when included in the ordinance,
under which the election was held is not as binding upon
the commissioners, as by contract, as if it was a fact re-
quired by the statute to be submitted to the voters, in or-
der to give authority for the incurrence of a municipal
debt, where it was first necessary to obtain the approval
of the voters. For such reason and the foregoing one,
that no assent has ever been obtained for the incurrence
of the debt, except that it be subject to the provision, the
commissioners are attempting to exercise a power, which
has never been granted to them, without the inclusion of
the provision. Therefore the judgment, so far as it
denied an injunction restraining the creation of the debt
and the negotiation of the bonds, without being subject

to the refunding privilege, as defined in the ordinance, is reversed, but in other respects the judgment is affirmed. The cause is remanded for proceedings consistent with this opinion.

All members of the court sitting.