76 P.2d 941

MANN v. CITY OF ARTESIA et al.

No. 4365.

Supreme Court of New Mexico.

Feb. 12, 1938.

Jack Hanny, of Artesia, for appellant.

Stagner & Reese, of Carlsbad, for appellees.

SADLER, Justice.

This suit to enjoin the City of Artesia, its mayor and governing board from the issuance of bonds in the authorized amount of $30,000 is before us on appeal from an order dismissing the complaint after the trial court had sustained a demurrer thereto and the plaintiff had elected to stand upon said ruling.

The purpose of the bond issue was to erect a municipal hospital in the City of Artesia. The defendants rely upon 1929 Comp. § 90-402, subd. 6, as statutory authority for the proceedings. It contains no specific requirement as to notice, and the only portion of said section referring to an election is the following language: "But no such debt shall be created, unless the question of incurring the same shall, at a regular election of officers for the city, be submitted to a vote of such qualified electors of the city or town as shall in the next preceding year have paid a property tax therein, and a majority of those voting upon the question, by ballot deposited in a separate ballot box, shall vote in favor of creating such debt."

Preliminary action looking to the bond issue was taken in the form of a resolution by the city council on February 14, 1936, and a proclamation signed by the mayor and city clerk was duly issued under that date, giving notice that an election on the bond issue would be held at the same time as the regular biennial election for municipal officers on Tuesday, April 7, 1936, and at the same places designated for said election. It further recited that the same judges and clerks would officiate, and the question to be submitted on the bond election was incorporated as follows:

"Question Submitted, Shall the City of Artesia, New Mexico, issue its negotiable coupon bonds in the sum of $30,000.00 for the purpose of erecting a municipal hospital, said bonds to be payable not more than 30 years nor less than 20 years after date of issue, and to bear interest not to exceed 5% per annum, payable semi-annually?

For Municipal Hospital............( )
Against Municipal Hospital........( )"

A proclamation for the regular biennial election, the form of which is not questioned, was contained in a separate proclamation by the mayor and city clerk issued under the same date, February 14, 1936. The mayor's proclamation calling the regular biennial election was published only one time, to wit, on February 20, 1936, whereas the governing statute, 1929 Comp. § 90-608, requires its publication "once a week for two successive weeks, the last insertion thereof to be at least one day before the date of said election." However, the resolution of the city council authorizing the submission of the bond issue at said election was published three times, once each week for three successive weeks; the last publication being March 5, 1936, for the election to be held on April 7, 1936.

The canvass of the election showed 163 votes for the municipal hospital and 39 opposed. While objection was not raised as to putting the question in the form, "For Municipal Hospital," and "Against Municipal Hospital," it was an indirect method at best for securing a true expression of the electorate on the vital issue, which was "For Bonds" or "Against Bonds," the usual form of placing the question on the ballot. See Comp. 1929, § 73-118, as to irrigation bonds, and section 120-706 as to school bonds.

While twelve separate errors are assigned, we shall discuss but one of them; it being decisive. It relates to the form of the preliminary resolution and the notice or proclamation of the election providing for bonds "to be payable not more than 30 years nor less than 20 years after date of issue," etc. Under the provisions of an applicable statute, Laws 1929, c. 201, 1929 Comp. § 16-101 et seq., amended in a respect immaterial to this discussion by Laws 1937, c. 125, the proposed bonds cannot lawfully have a longer maturity than 20 years, and the various annual maturities must commence "not later than the third year after the date of issue of such bonds."

Just how those conducting the proceedings came to fix the maturities chosen is not clear. 1929 Comp. § 90-402, subd. 6, authorized a maximum maturity of 30 years, but fixed a minimum of 10 years. The maturities given do not even furnish compliance with this statute which, of course, in this respect is superseded by Laws 1929, c. 201. Whatever the explanation, and none is suggested, this defect is fatal. Bonds cannot be issued with maturities as represented in the proposal voted upon without violating the statute and thereby rendering them invalid. They cannot be issued under the statute because contrary to the proposal as respects maturities and because lacking the assent of the voters to bonds having such maturities.

There is to be found in section 90-402, subd. 6, under which statute the defendants were proceeding, no specific requirement as to notice. Of course, notice was contemplated, but we may assume as defendants contend that it was unnecessary to fix maturities in the notice; that their inclusion was surplusage as respects either authority or direction therefor. Nevertheless, it was put in. The voters expressed themselves for or against the proposed issue with this representation before them. And its effect, now that it is discovered it cannot be complied with, is to deny the right to issue the bonds in question.

While there is a division of authority upon the question, the better reasoned cases (and they seem to us to represent the weight of authority) hold such a misrepresentation in the election notice as that here shown will support injunctive relief to stay issuance of the bonds. See Skinner v. City of Santa Rosa, 107 Cal. 464, 40 P. 742, 744, 29 L.R.A. 512; City of

North Sacramento v. Irwin, 94 Cal.App. 652, 271 P. 788, 272 P. 767; Neacy v. City of Milwaukee, 142 Wis. 590, 126 N.W. 8; Simpson v. City of Nacogdoches, Tex.Civ. App., 152 S.W. 858; City of Amarillo v. W. L. Slayton & Co., Tex.Civ.App., 208 S.W. 967; Eastern Shore Public Service Co. v. Town of Seaford, Del.Ch., 187 A. 115, 122; Oklahoma Utilities Co. v. City of Hominy, 168 Okl. 130, 31 P.2d 932; Percival v. City of Covington, 191 Ky. 337, 230 S.W. 300, 304; Madera Irr. Dist. v. Miller, 9 Cir., 47 F.2d 61. See 21 C. J. 1198, § 4171, and note, 93 A.L.R. 362.

The other line of authorities views with less concern the inclusion in the notice of something not required, particularly where to comply with the matter represented would be unlawful. See State v. Salt Lake City, 35 Utah 25, 99 P. 255, 18 Ann. Cas. 1130; In re Verde River Irr. & Power Dist. Bonds, 37 Ariz. 580, 296 P. 804; Allison v. City of Phoenix, 44 Ariz. 66, 33 P.2d 927, 93 A.L.R. 354; State v. City of West Palm Beach, 127 Fla. 849, 174 So. 334; Phillips v. Atkins, 229 Ala. 15, 155 So. 537. Cf. Bell v. City of Shreveport, 127 La. 691, 53 So. 928; Bay County v. Hand, 257 Mich. 262, 241 N.W. 256.

In Skinner v. City of Santa Rosa, supra, the Supreme Court of California dealt with the question before us. It said: "No question is made as to the regularity of the proceedings up to and including Ordinance No. 149, nor that bonds issued under that ordinance and in the form therein prescribed would have been valid, but the bonds proposed to be issued under Ordinance 156 do not conform to the ordinance calling the election, nor to important particulars specified in the notice of election, and in one of these particulars they do not conform to the statute under which it is proposed to issue them."

Then follows discussion of Yesler v. City of Seattle, 1 Wash. 308, 25 P. 1014, greatly relied upon by proponents of the proposed bond issue. Following such discussion, the court continues: "We cannot assent to the conclusion reached by the learned justice who wrote the opinion, nor to the argument by which it is reached. The opinion concedes that under the constitution and laws of the state no indebtedness can be incurred beyond a certain limit, without authority expressed at an election duly held for that purpose; so that the real question to be determined is, has that assent been given? It is quite true that in that case, as in this, particulars were inserted in the submission which the statute did not require to be submitted; but these particulars having been submitted, the vote authorizing the indebtedness to be incurred imports the particulars named as the conditions upon which that assent has been given, and hence no one can say that, without these favorable conditions, the result of the election would have authorized the indebtedness to be incurred. The rate of interest, the place of payment, the kind of money in which payment must be made, would influence any business man in determining whether he should incur a personal debt, and must

do so when he is called upon as a voter to determine whether he will favor his municipality's incurring a debt, for the payment of which, in common with others, his property is liable to taxation. He might readily consent, upon very favorable terms being offered or proposed, and strenuously oppose it if the terms were unfavorable or were uncertain. If the terms and conditions submitted to the electors may be departed from, and such election held to authorize the issuance of bonds under other terms and conditions, a door will be opened authorizing the common council to submit a proposition so favorable as to secure beyond question a favorable vote, and then change the conditions as to rate of interest and otherwise, even without any fraudulent purpose or intent, so that, if again submitted, an overwhelming defeat would result. The logical inference from the case above cited is, however, that, as to all matters required to be submitted, such submission measures the authority of the common council. The case of Moore v. City of Walla Walla (C.C., D.Wash.) 60 F. 961, so far as the above questions are concerned, follows the decisions of the state court, which are of binding force in the federal court, and is therefore not an independent authority, and lends no weight to Yesler v. City of Seattle, supra, which it cites. What has been said applies as well to the place of payment and the exact statement of the amount to be levied each year of the 40 years, as to the interest, so far as its influence upon the vote is concerned."

In Eastern Shore Public Service Co. v. Town of Seaford, supra, a Delaware case, the court said: "It does not help the situation any for the defendants to say that they do not intend to build a plant with the view of supplying the inhabitants of the vicinity with electric power. The thing of moment is what the resolution calling for the referendum represented to the electors as intended, on the strength of which the voters were invited to form their individual judgments. To what extent, if any, votes were received in favor of the bond issue because of the 'and vicinity' feature, no one of course can say. The court is not permitted to speculate upon it. It may have attracted votes in sufficient number to entail a favorable result. Why this unauthorized purpose was inserted in the proposition to be voted upon, it is difficult to understand. It is clear that if the Council asks for authority from the electors to borrow money, the vote must be upon a question which proposes a lawful purpose unincumbered by a purpose which is unlawful and therefore cannot be carried out. In Percival v. City of Covington, 191 Ky. 337, 230 S.W. 300, it was held that if a provision in connection with a proposed bond issue not necessary to be submitted to the people was in fact submitted, the authorities were bound faithfully to carry it out. If this principle were applied here, the town would be confronted with the impossible situation that the Council of Seaford would be bound to carry out the unlawful purpose of build-

ing a plant to supply current to the inhabitants of the vicinity. The Kentucky case rests necessarily on the view that the voters in casting their votes are governed in their judgments by the proposition as formally submitted to them and that it must be assumed that they would not have voted as they did if the proposition had been different in its substantial terms. That principle governs here. It follows that inclusion in the question to be voted upon of a proposition to supply current to the vicinity of Seaford when the town lacked lawful power to do so, nullifies the result of the election."

In Percival v. City of Covington, supra, the Court of Appeals of Kentucky reviewed the respective lines of authority and, concluding that the Skinner Case from California was the better supported by reason, followed it. The court said: "Upon the other hand, the Supreme Court of California, in Skinner v. Santa Rosa, 107 Cal. 464, 40 P. 742, 29 L.R.A. 512, repudiated both the conclusions and reasoning of the Supreme Court of Washington, in Yesler v. Seattle, supra, and held that a council was bound to observe every provision of the submission, whether required by statute or not, upon the theory that to hold otherwise would open the door to fraudulent submissions, and for obtaining, without fraud, a grant of power, that would otherwise be denied. The Supreme Court of Appeals of West Virginia, in Lawson v. Kanawha County Court, 80 W. Va. 612, 92 S.E. 786, approved the doctrine enunciated by the California court,

in Skinner v. Santa Rosa, supra, and criticized the conclusions reached in Yesler v. Seattle, supra. We think the conclusions of the courts in Skinner v. Santa Rosa, and Lawson v. Kanawha County Court are founded upon better reasons than the opinions holding to the contrary, and have the advantage of being in accordance with the principles of good faith, which should be exercised in such matters. In the instant case, we do not mean to attribute any want of good faith to the commissioners, who are proposing to create the debt and negotiate the bonds, with the refunding privilege provided by the ordinance, under which the election was held, and from which they acquired their authority, eliminated; but the refunding right, although not necessary under the statute to be included in the submission to authorize a municipal debt, in the instant case it was submitted; its submission was not prohibited by the statute, and was not unlawful and it is impossible to discern why such a provision, when included in the ordinance under which the election was held, is not as binding upon the commissioners, as by contract, as if it was a fact required by the statute to be submitted to the voters, in order to give authority for the incurrence of a municipal debt, where it was first necessary to obtain the approval of the voters. For such reason, and the foregoing one, that no assent has ever been obtained for the incurrence of the debt, except that it be subject to the provision, the commissioners are attempting to exercise a pow-

er, which has never been granted to them, without the inclusion of the provision. Therefore the judgment, so far as it denied an injunction restraining the creation of the debt and the negotiation of the bonds, without being subject to the refunding privilege, as defined in the ordinance, is reversed, but in other respects the judgment is affirmed."

While asserted by Chief Justice Beatty, in his specially concurring opinion in Murphy v. San Luis Obispo, 119 Cal. 624, 51 P. 1085, 39 L.R.A. 444, that the Murphy Case overrules Skinner v. City of Santa Rosa, supra, on one point, this view has not been accepted by the Supreme Court itself. See explanation of the remarks of the Chief Justice in Federal Construction Co. v. Wolfson, 186 Cal. 267, 199 P. 512, 29 A.L.R. 1098. See, also, Oklahoma Utilities Co. v. City of Hominy, supra. The point decided in the Skinner Case, which Chief Justice Beatty thought the Murphy Case overruled, was that semi-annual payment of interest increases the rate of interest over annual rate. The California courts continue applying the doctrine of the Skinner Case. See City of North Sacramento v. Irwin, 94 Cal. App. 652, 271 P. 788, 272 P. 767. And as shown by the cases cited along with it, supra, its persuasive reasoning continues to draw adherents from the courts of other jurisdictions.

■ Where a condition, even though not required yet reasonably calculated to mislead the voters, is incorporated in the notice and the proposal carries, the voters' assent is wanting to any material departure in the form of the bonds from that represented. Here the voters assented to bonds maturing in not less than twenty nor more than thirty years. It is proposed to give them bonds maturing in not less than three nor more than twenty years.

It is suggested that the ultimate burden to be borne by the taxpayers under bonds having a maximum maturity of thirty years and a minimum of twenty years would be greater than the burden arising from the repayment of bonds to mature serially within twenty years with retirement beginning not less than three years from date of issue. While this may be true, in long range perspective, nevertheless the immediate burden of bonds with maturities as represented would be less.

Furthermore, some voters, and we may not speculate upon how many, may have been influenced to support the issue for the very reason that the bonds would not mature in any event within a shorter period of time than twenty years. In other words, they may have been for bonds if they could postpone their repayment to the next generation; otherwise not. Feeling, therefore, that the proposal as to maturities was calculated to mislead the voters, we think the reasoning of the Skinner Case applies to deny authority for issuing the bonds.

In State v. City of West Palm Beach, cited, supra, as supporting the doctrine of State v. Salt Lake City, supra, the Supreme Court of Florida aligns New Mexico with Utah by citing, along with the Salt Lake City Case, City of Albuquerque v. Water Supply Co., 24 N.M. 368, 174 P. 217, 221, 5 A.L.R. 519. One question in the Water Supply Co. Case related to the publication of notice of the bond election. The statute, section 3717, Code 1915, required publication of the notice "at least once each week for four consecutive weeks immediately prior to said election." The notice of election was published March 1, 8, 15, and 22, 1916, for an election to be held April 4, 1916. It was urged upon us that this was not "immediately prior to said election," as required by law. We held the point was ruled directly by Board of Education of Roswell v. Citizens' National Bank, 23 N.M. 205, 167 P. 715, and more distantly by Barry v. Board of Education of Clovis, 23 N.M. 465, 169 P. 314.

Undoubtedly it was our statement in the opinion that there was "no showing that any injury resulted by reason of the premature publication of the notice" that caused the Florida court to draw this case to the support of its conclusion. The cases are different. In the Water Supply Co. Case there was no misleading proposal contained in the notice itself. It was simply a question whether the last of four weekly insertions published thirteen days before the election amounted to substantial compliance with a statute calling for publication "once each week for four consecutive weeks immediately prior to said election." We held that it did, since "apparently, all the voters of the city were fully advised as to the date of the election and the purpose thereof." This is quite different from the situation where, being advised of the date of the election, the voters give majority assent to bonds with maturities as described in the proposal and are offered in lieu thereof bonds differing in a respect calculated to have influenced their votes.

We do not mean to intimate that there was any bad faith exercised by the city officials in respect of the notice, or that an intentional effort to mislead was made. We assume, and there is nothing in the record to the contrary, that they acted in the best of faith. The fact remains, however, that the proposal contained misleading information as to maturities and even good faith does not remove its effect.

In closing this opinion, it is not amiss to suggest to the bar the importance of presenting cases of this character in sufficient time before decision is required, if a favorable decision should result, to enable the court, without stress and hurry, to consider the same. Proceedings for this bond issue were initiated February 14, 1936. No doubt carrying forward the bond proceedings expeditiously would have provoked the instant suit much sooner than the record discloses. Suit was not filed until December 20, 1937, and the cause docketed in this court on December 27th

following. Approximately two years thus intervened between initiation of the proceedings and presentation of the matter in this court.

It follows from what has been said that the judgment of the district court must be reversed. The cause will be remanded, with a direction to overrule the demurrer and for further proceedings not inconsistent with the views herein expressed.

It is so ordered.

HUDSPETH, C. J., and BICKLEY and ZINN, JJ., concur.

BRICE, J., did not participate.