EASTERN SHORE PUBLIC SERVICE COMPANY, a corporation of the State of Delaware, GEORGE H. HUSTON, MADISON WILLIN, EDWARD J. WINDER, JAMES E. DUTTON, SR., ISADORE STEPHANY, HARRY M. BELL, ALEXANDER H. LORD, ROBERT B. ELLIOTT, CHARLES M. HOLLIS, JAMES FRIEDEL, JULIAN G. WEBSTER, JAMES E. DUTTON, JR., J. THORNTON STEWART, KARL K. BROWN, IRA W. WHEATLEY, J. EMORY MILES, E. CLARENCE VINCENT, CHARLES J. WEST, HARRISON M. MANNING, HOWARD F. ALLEN, ALBERT E. CHIPMAN, JOHN J. KINDER, W. HARRY BROWN, WILLIAM T. LANK, T. SCOTT PURSE, MONROE H. ADAMS and WILLIAM B. MILLER,

*vs.*

THE TOWN OF SEAFORD, a municipal corporation of the State of Delaware, HARRY A. PHILLIPS, MARTIN N. WILLEY, HOWARD H. MORGAN, ALBERT J. LANK and HARLAN A. WILLIN, individually and as members of the Council of the Town of Seaford, and GEORGE W. DONOHO, Mayor thereof.

*Sussex County, June 11, 1936.*

*James M. Tunnell,* of Georgetown, for individual complainants.

*Frank M. Jones,* of Georgetown, and *Robert H. Richards* and *Caleb S. Layton,* of the firm of Richards, Layton & Finger, both of Wilmington, for complainant Eastern Shore Public Service Company.

*Robert G. Houston* and *Ralph S. Baker,* both of Georgetown, and *James R. Morford,* of the firm of Marvel, Morford, Ward & Logan, of Wilmington, for defendants.

THE CHANCELLOR: The questions which the bill and rule for injunction present arise out of proceedings taken by the town of Seaford looking to the authorization of a bond issue in the amount of one hundred and fifty thousand dollars, to raise funds for the installation of a municipally owned electric light plant. The proceedings are claimed by the defendants to be in all respects legal and in conformity with provisions of the act (39 *Del. Laws, c.* 25, § 4) approved December 14, 1933, amending the charter of the town.

The bill assails the proceedings in question as not conforming to the requirements of the act in several particulars, and seeks an injunction against a consummation of the end to which the proceedings were directed, *viz.,* the issue and sale of bonds.

The act in *Section* 4 thereof authorizes the Council of the town to borrow money and issue bonds or certificates of indebtedness to secure the payment thereof, to provide

funds for the erection, etc., of any plant, etc., for the supply, manufacture and distribution of electricity or gas for light, heat or power purposes, etc. After making general provisions to this effect, the act proceeds as follows:

"Provided, however, that the borrowing of the money therefor shall have been authorized by the Town Council and shall have been approved by the electors in the manner and at the time following:

"1. Council by resolution shall propose to the electors of the town by resolution that the stated amount of money shall be borrowed for any of the above purposes. The resolution shall state the amount of money desired to be borrowed, the purpose for which it is desired, the manner of securing the same, and all other pertinent facts relating to the loan, and shall fix a time and place for hearing on the said resolution.

"2. Notice of the time and place of the hearing on the resolution authorizing said loan shall be printed in a newspaper published in the town at least one week before the time set for said hearing.

"3. A second resolution shall then be passed by Council ordering a special election to be held not less than thirty days and not more than sixty days after the date of its determination after said hearing to borrow the said money for the purpose of voting for or against the proposed loan.

"4. The notice of the time and place for holding the said special election shall be printed in a newspaper in the town once a week for two successive weeks prior to the election. And the special election shall be conducted by a Board of Electors as provided in the case of an annual election.

"5. At the special election, every owner of property whether individual, partnership, or corporation shall have one vote for every dollar or part of dollar of tax paid by said owner during the year preceding said election and the said vote may be cast either in person or by proxy.

"6. The Board of Election shall count the votes for and against the proposed loan; and shall announce the result thereof, shall make a certificate under their hands of the number of votes cast for and against the proposed loan, and shall deliver the same to the Council, which said certificate shall be entered on the minutes of the Council and the original shall be filed with the papers of the Council.

"The form of bond or certificate of indebtedness, the times of payment of interest, the classes, the time of maturity, and provisions as to the registration shall be determined by the Council. The bonds shall be offered for sale to the best and most responsible bidder therefor after advertisement in a newspaper of the town or otherwise, for at least one month before offering the same for sale. The Council shall provide, in its budget, and in fixing the rate of tax, for the payment of interest and principal of said bonds at the maturity or maturities thereof, and a sinking fund therefor. The faith and credit of the Town of Seaford shall be deemed to be pledged for the due payment of the bonds and interest thereon issued under the provisions hereof, when the same have been properly executed and delivered for value.

"The bonded indebtedness shall not at any time exceed in the aggregate the total sum of fifteen per centum of the value of the real property situate within the limits of the town as shown by the last assessment preceding the creation of the said indebtedness."

On October 9, 1934, the Council adopted the following resolution in apparent compliance with paragraph one of the section of the statute, quoted *supra:*

"It is moved and seconded that a resolution be adopted that a public meeting be held to propose to the citizens of the Town of Seaford, the question whether a $150,000 bond issue be raised for the purpose of installing an electric light plant. The meeting to be held on the 25th day of October, 1934, at 8 o'clock in the evening at the school building, the manner of securing this debt of $150,000 to be by a bond issue."

On October 12, 1934, the following notice of a hearing was published in two newspapers published in Seaford, in apparent compliance with the provisions of paragraph two of the section of the statute, quoted *supra:*

"Attention:

Seaford Property Owners.

"At a regular meeting of Town Council, under the date of Oct. 9th, 1934, the following resolution was adopted:

" 'It is moved and seconded that a resolution be adopted that a Public Meeting be held to propose to the citizens of the Town of Seaford the question whether a $150,000 bond issue be raised for the

purpose of installing an Electric Light Plant. The meeting to be held on the 25th day of October, 1934, at 8 o'clock in the evening, at the Seaford School Auditorium. The manner of securing this debt of $150,000 to be by a bond issue.' "

"Mayor and Council of Seaford."

The meeting was held on October 25, 1934, at which only a few, about fifty, of the electors were in attendance together with the officials of the town. No objections were made to the bond issue and no discussion was indulged in. Whereupon the meeting adjourned. (In July preceding a similar meeting had been called by the Council at which there was a large attendance and full discussion. The July meeting, however, may be disregarded for the reason that it was not called in accordance with the statute, and was apparently recognized by the Council as wholly nugatory.)

After the meeting of October 25, 1934, the Council adopted the following resolution on November 11, 1934, apparently in obedience to the requirements of paragraph three of the section of the statute quoted *supra:*

"Be it resolved that the property owners have the privilege of voting at a referendum election to decide whether the Town Council shall have the authority of bonding the Town of Seaford for one hundred and fifty thousand ($150,000) dollars to build an electric light plant in the Town of Seaford. This election to be held on Tuesday, January 8th, 1935, between the hours of one and four o'clock P. M. at the Town Council room."

Notice of the election was published in Seaford News, a newspaper published in the town, on December 21, 1934, and on January 4, 1935. The notice was in part as follows:

"Attention
Property Owners of Seaford

"A referendum vote of the property owners of the Town of Seaford, Delaware, will be held on Tuesday afternoon, January 8th, 1935, between the hours of one and four o'clock at the Town Office.

"The purpose of this vote is to determine whether the Town

Council shall have the authority to bond the Town of Seaford for One Hundred and Fifty Thousand Dollars ($150,000) to erect and maintain an Electric Light Plant to furnish electricity to the inhabitants of the Town of Seaford and vicinity."

The vote was taken on January 8, 1935. A total of 13,140 votes was received of which 7,419 were cast in favor of the bond issue and 5,748 in opposition thereto.

Following the vote, on January 9, 1935, the Council named a committee to ascertain the best rate and price that could be procured on the bonds.

On May 14, 1935, another committee was named by the Council to investigate the advisability of floating a $150,000 bond issue for the erection of a municipal electric light plant by private capital or by government loan or grant, with direction to report on May 28.

On the last mentioned day the two committees reported to the effect that a private firm of investment bankers would take the bonds at four per cent., and that the Federal government would take them at three per cent., and allow a grant of forty-five per cent. of the amount required to build the plant. Thereupon the Council resolved that the proposition of a government loan and grant was most attractive and appointed a committee to assemble the proper facts and make proper application for securing said loan and grant.

On June 14, 1935, Council instructed the last named committee to employ Gibbs and Hill as survey engineers to make a supplemental survey to that of a certain Mr. Glueck's to bring the survey up to the requirements of the Public Works Administration of the United States Government, the agency having control of loans and grants.

On June 25, 1935, the Council authorized the Mayor to make application for the loan and grant. The application was duly made but favorable action thereon appears to have been temporarily restrained by the Supreme Court of the District of Columbia.

After the referendum vote, advertisements of an offer of bonds were published from time to time by the Council. The amount of the issue was first stated as being $100,000, then $130,000 and finally $150,000. These varying amounts are to be explained by the fact that estimates of the sum necessary to be borrowed varied from time to time because of two factors, *viz.*, first, the belief and then its absence that a government grant would be obtained, and second, changes in the capacity and consequently in the size of the plant to be constructed. The estimates of cost ranged from $149,000, the present figure, to $180,000.

The complainants attack the authority of the town to borrow money on bonds in any amount because, they contend, the proceedings heretofore taken in the way of authorization are not in conformity with the statute in several essential respects.

Statutes of the kind here under review are mandatory in character. The legislature intends them to be followed in every substantial particular. Literal compliance with their terms is not required in every item of detail regardless of its character. Substantial compliance is, however, exacted. *Percival v. City of Covington,* 191 *Ky.* 337, 230 *S. W.* 300; *Elyria Gas & Water Co. v. City of Elyria,* 57 *Ohio St.* 374, 49 *N. E.* 335; 2 *Dillon, Municipal Corporations,* § 891, *p.* 1380; 8 *McQuillan, Municipal Corporations,* § 2197. The general principle is that where provisions of a statute are merely directory, failure to follow them with exactness will not vitiate the final result. It was observed by no less an authority than Chief Justice Cooley of Michigan that, "the courts in their anxiety to sustain the action of public officers, where irregularities have occurred without the intervention of bad faith, have gone to the very extreme in holding legislative enactments to be merely directory, and have perhaps sometimes made decisions which dispensed with those things which the Legislature intended as essentials." *Hoyt v. City of East Saginaw, et al.,* 19 *Mich.* 39, 46, 2 *Am. Rep.* 76.

In the same case, upon the subject of what provisions of a statute are mandatory and what are directory, he made the following observations which are of peculiar pertinency to the case now before the court:

"It is sometimes the case, that some portion of the legislative enactment prescribing the course of proceeding to be pursued by public officers, can be treated as directory merely, and not mandatory; so that a failure in strict compliance will not defeat the whole proceeding; but this can never be the case, where that which is required to be done is in the nature of a condition precedent to subsequent action, and not simply a step in the course of the proceedings prescribed with a view to a regular, orderly and prompt transaction of the business in the progress of which such step is to be taken. * * * The duty of the courts is to examine the statute carefully with a view to giving the legislative intention effect; and they ought to sustain defective proceedings only in those cases where it is fairly inferable that they observe that intent more nearly by sustaining them than by setting them aside on account of the omitted formality. Such inference is not admissible in reference to those things which are preliminary and jurisdictional."

With respect to the objections to the proceedings which the complainants raise by their bill, those which are addressed to the sufficiency of the resolution proposed by the Council to the electors to be considered at the public hearing and to the character of the issue submitted for vote of the electors, are matters that go to substance rather than to the mere regularity and orderly conduct of the proceedings. The Council possessed no authority to issue the bonds, unless two conditions precedent had been substantially complied with. These conditions were first that the electors of the town had been advised by resolution of certain specified facts and afforded an opportunity to be heard by the Council with respect to the proposal, and second, having been so advised and heard, that a majority of the property owners had voted in favor thereof. Compliance with these conditions was indispensable to the authority of the Council to borrow the money.

The manifest purpose of the hearing was that the electors might be so advised upon the material facts that

when a vote was later taken its result would be the consequence of an informed public opinion. The information which the statute requires to be given to the electors is directed by it to be imparted to them in a resolution proposing that the money be borrowed; and the only resolution sufficient in this regard is the one which is submitted at a time and place properly advertised by newspaper publication. We must look, therefore, to the contents of such a resolution and not to any extraneous source such as oral statements made at the hearing, to see if the information required by the statute has been given to the electors.

Now what was the information which the resolution imparted to the electors? A reading of the resolution of October 9, 1934, shows the information to be merely this: That it is proposed to borrow one hundred and fifty thousand dollars on bonds to install an electric light plant. That is all. A more meagre statement of facts can hardly be conceived. On the question of what information the resolution shall set out, the statute requires as follows:

"The resolution shall state the amount of money desired to be borrowed, the purpose for which it is desired, the manner of securing the same, and all other pertinent facts relating to the loan, and shall fix a time and place for hearing on the said resolution."

The resolution which was adopted satisfies the statute in stating the amount to be borrowed and in fixing the time and place for the hearing. That is conceded, as of course it must be. It undertakes to meet the requirement of the statute that the purpose shall be stated for which the money is required, by stating in the most general way that the purpose is one of "installing an electric light plant." What the character of the proposed plant is to be, whether with or without appliances for the distribution as well as for the manufacture of electric current, is not stated. Neither is it stated whether the current is to be manufactured for all three or only a part of the purposes of light, heat and power. These considerations would of course affect the size and consequent cost of the plant. The estimated cost of

the plant is nowhere stated. Neither is it stated what the rate of interest will be which the bonds will draw, nor their maturity, and whether by classes or not, facts which would bear very materially upon the annual tax burden of the property owners of the town. I mention such matters as these not with the view of now deciding as a matter of law that they or any other matters that further thought might suggest are all required to be stated in the resolution. They are mentioned only in the way of emphasizing the complete barrenness of the resolution in respect of "other pertinent facts relating to the loan" which the statute demands. "Other pertinent facts" certainly means to include something more than those things specially mentioned to which the word "other" stands in relation, *viz.*, something more than the amount to be borrowed, the purpose for which it is desired and the manner of securing the same. The resolution sets out nothing whatever which even purports to be other than the things specifically mentioned by the statute. How full the statement of the other pertinent facts should be is a question which the present bill does not call upon the court to say. It is enough for the instant purpose to show that so far as such other pertinent facts are concerned the resolution is wholly silent.

The general expression "for the purpose of installing an electric light plant" leaves to the Council the widest latitude of action with respect to all such matters as the foregoing and leaves the electors completely uninformed with respect thereto. Of course no one would suggest that the resolution should reach down to details concerning those things which are appropriately the subject of plans and specifications. But if the Council had reached any definite conclusions with respect to the general matters before referred to, it could very well have used language of such general import as to leave its control over details unrestrained and at the same time have satisfied the requirement of the statute that the electors be afforded the substantial information necessary for them in the making of an in-

telligent decision at the polls. Such language could easily have been framed by way of affirmative substantial description which would of course impliedly negative all that was inconsistent therewith. In view of the facts as they appear in the bill and affidavits, however, it is to be seriously questioned whether the Council itself had formulated any definite opinion touching some at least of the matters above referred to. There is room to believe that the situation was one where the Council was feeling its way towards a very general and as yet ill-defined result, and, while its mind was in a state of flux, asked the electors to give them blanket authority to issue bonds up to a maximum of one hundred and fifty thousand dollars. If such was the situation, their proceedings can find no supporting aid from the statute.

Such matters as are above referred to are said by the defendants not to be required by the statute to be stated in the resolution in respect of the "purpose for which it (the loan) is desired." Some of them at least are, however, within the phrase of the statute—"all other pertinent facts relating to the loan." It was argued by the solicitors representing the defendants, taking a rather technical view, that "all other pertinent facts relating to the *loan*," can mean only such things as the amount of the loan, its interest rate, maturities and the form of bond, and cannot relate to information regarding the character of the project which the loan is to finance. If this be the narrow meaning of the statute, the solicitors who contend for it confess themselves unable to ascribe any meaning whatever to the phrase "all other pertinent facts relating to the loan," for they contend at the same time that by reason of later provisions of the statute the question of the "form of bond or certificate of indebtedness, the time of payment of interest, the classes, the time of maturity, and provisions as to registration shall be determined by the Council" *after* the referendum has been held. The view contended for is not acceptable. "All other pertinent facts relating to the loan"

is meant to include all pertinent facts that bear on the project which the loan is designed to finance. It is to be noted that in the said later clause of the statute where, it is argued, an intent is shown that the Council may determine the form of bonds, etc., *after* the referendum, the matter of fixing the rate . of interest is not included. The only expression with respect to interest is—"the times of payment of interest." So that one very pertinent fact relating to the loan, *viz.*, the rate of interest to be paid, even on the technical construction advanced by the solicitors for the defendants, was not left by the statute for subsequent determination by the Council. This pertinent fact was not embodied in the resolution which the statute required to be submitted at the public hearing.

The conclusion under this head of the case is that the resolution submitted to the electors by the Council for public hearing failed by its omissions substantially to comply with the requirements of the statute. In consequence, the purported authority to the Council to issue the bonds was not lawfully conferred.

There is yet another infirmity in the proceedings which should be mentioned. It will be observed that the resolution submitted at the public hearing contained no reference to a proposition that a plant should be erected having sufficient capacity to supply current to the inhabitants of the vicinity of Seaford. The first appearance of a purpose on the part of the authorities to erect a plant to supply the vicinity as well as the municipality was in the resolution submitting the question to the people for a vote. It is contended by the complainants and not controverted by the defendants, that the town of Seaford has no power conferred upon it by law to engage in the business of manufacturing and selling electric current to consumers located in its surrounding vicinity. Whether it would have authority to dispose of surplus power generated by a plant erected solely to meet the demands of its own inhabitants by sale of it in the vicinage, it is not necessary to decide. Let that question

be decided as it may, yet, in view of the apparent concession at the argument, the town has no authority from the legislature to erect a plant designed to meet the requirements of inhabitants living in the vicinity as well as those living in the town of Seaford.

But the referendum that was taken included that very proposition. In *Leavenworth v. Wilson,* 69 *Kan.* 74, 76 *P.* 400, 401, 2 *Ann. Cas.* 367, it was held that where the statute authorized the municipality to borrow money to erect or purchase a light or water plant, provided the voters at a referendum approved thereof, the proposition submitted to the people could not be submitted in the alternative, whether to construct or to purchase. The submitted question had to be a single one, that is to say whether to construct as the sole proposition, or whether to purchase. The reason for this conclusion was, as stated by the court, that as erecting or purchasing were two entirely different things, "the judgment of the mayor and council upon one of these subjects might well be opposed by the people through a majority vote in favor of bonds, although the judgment of the same officials upon the other subject would be overwhelmingly repudiated at a bond election. The ballot * * * obliged the voter to approve bonds for both purposes, or to reject bonds for both purposes. If he favored one plan, and disapproved the other, he was allowed no opportunity whatever to indicate his view. Because of the dual ballot, persons adverse to purchase may have voted, with persons adverse to building, for bonds, which, thus supported, carried, although both propositions would have failed ignominiously had they been separately submitted. Therefore the election was not a fair one to the people of the city of Leavenworth."

This case was followed in *Farmers' Loan & Trust Co. v. City of Sioux Falls,* (*C. C.*) 131 *F.* 890, which was however reversed on appeal (*C. C. A.*) 136 *F.* 721, and was refused to be followed in *Beers v. City of Watertown,* 43 *S. D.* 14, 177 *N. W.* 502. The two courts which disagreed

with the conclusion of the Kansas court in *Leavenworth v. Wilson, supra,* did so, however, solely on the ground that the submission of a question in the alternative is unobjectionable if such is the form prescribed by the statute, and if the manifest intent of the statute is that the sense of the people shall be taken only upon the question of whether money shall be made available for the council to build or to purchase in the exercise of its discretion. These cases therefore in no wise detract from the soundness of the observations of the court in *Leavenworth v. Wilson,* quoted *supra,* upon the unreliability of the result of a referendum in which the *voters* are to select between one of two propositions and the same are put to them in the alternative. The conflict between *Leavenworth v. Wilson,* and the two cases that disagree with it arises over the question of where discretion to choose between two propositions is lodged by the statute. Is it with the Council or with the voters? If it is with the latter as the case of *Leavenworth v. Wilson* holds, then the vote must be taken on a specific question and not upon alternatives; if it is with the Council, as the other two cases hold, then, if the statute so contemplates, the voters may be asked to say whether the Council shall be authorized to choose between the alternatives. On analysis, therefore, the logic of the court in *Leavenworth v. Wilson* found in the excerpt quoted *supra,* has not been rejected by the two cases which differ with it on other grounds.

In *Elyria Gas & Water Co. v. City of Elyria,* 57 *Ohio St.* 374, 49 *N. E.* 335, 337, before cited, reasoning similar to that advanced in *Leavenworth v. Wilson* was applied in support of a repudiation of the result of an election as a safe reflection of the popular will. In passing it may be observed that *Beers v. Watertown, supra,* while rejecting the result in *Leavenworth v. Wilson,* yet expresses no disapproval of the *Elyria Gas & Water Case* which it cites and comments upon, a circumstance confirmatory of the

view expressed above that the reasoning referred to has not been rejected.

In *Elyria Gas & Water Co. v. City of Elyria,* the statute empowered the Council to borrow money in order to erect *or* purchase waterworks, provided the voters on a referendum approved. A vote was taken upon a proposal to borrow money to erect *and* construct a waterworks. It was held that the vote was invalid because "a resolution declaring the necessity for the issue and sale of municipal bonds for the purchase and erection of waterworks is not a resolution for either purpose." Said the court:

> "The reason is that the requisite majority of the council and of the electors may be in favor of one measure, and against the other, or against each; while by uniting them as one, and submitting them to be acted upon in that form, the members of council, and the electors, are required to vote for or against both propositions combined; or abstain from voting at all, and thus denied the right to express their will with respect to each."

Upon the point now under examination, the instant case is more analogous to the one just cited than to the others which are above referred to in this connection. Here there was not strictly a joining of two purposes, but of a single purpose having a conjunction of two objects, which is essentially the same situation as in the *Elyria Gas & Water Case* when it is considered that one object was lawful, *viz.,* the supplying of Seaford, and the other object, *viz.,* the supplying of the vicinity, was unlawful. A manifest distinction between the *Elyria Gas & Water Case* and this one is that in the former each of the two conjoined objects was legal, whereas here one was lawful and the other was not, a distinction which exaggerates the infirmity of the result of the election in this case and makes even more applicable the reasoning in the other.

It does not help the situation any for the defendants to say that they do not intend to build a plant with the view of supplying the inhabitants of the vicinity with electric power. The thing of moment is what the resolution

calling for the referendum represented to the electors as intended, on the strength of which the voters were invited to form their individual judgments. To what extent, if any, votes were received in favor of the bond issue because of the "and vicinity" feature, no one of course can say. The court is not permitted to speculate upon it. It may have attracted votes in sufficient number to entail a favorable result. Why this unauthorized purpose was inserted in the proposition to be voted upon, it is difficult to understand. It is clear that if the Council asks for authority from the electors to borrow money, the vote must be upon a question which proposes a lawful purpose unincumbered by a purpose which is unlawful and therefore cannot be carried out. In *Percival v. City of Covington,* 191 *Ky.* 337, 230, *S. W.* 300, it was held that if a provision in connection with a proposed bond issue not necessary to be submitted to the people was in fact submitted, the authorities were bound faithfully to carry it out. If this principle were applied here, the town would be confronted with the impossible situation that the Council of Seaford would be bound to carry out the unlawful purpose of building a plant to supply current to the inhabitants of the vicinity. The Kentucky case rests necessarily on the view that the voters in casting their votes are governed in their judgments by the proposition as formally submitted to them and that it must be assumed that they would not have voted as they did if the proposition had been different in its substantial terms. That principle governs here. It follows that inclusion in the question to be voted upon of a proposition to supply current to the vicinity of Seaford when the town lacked lawful power to do so, nullifies the result of the election.

The foregoing is all that need be said in disposing of the rule for injunction favorably to the complainants. Other questions were raised and debated at the argument which, in view of what has already been said are unnecessary to be fully discussed. Without elaborating upon them,

it will suffice to mention them and briefly to express the court's views thereon. They are as follows:

The statute requires notice of the election to be published in a newspaper of the town once a week for two successive weeks prior to the election. The first publication was on December 21, 1935, and the last one on January 4, 1936. The election was on January 8, 1936. Thus the two successive weeks were not immediately prior to the election day, and one day intervened between each of the weeks of publication, thereby, the complainants say, rendering the weeks non-successive. That the publications were notorious and in no wise deficient in amply disseminating knowledge of the proposed election, is not denied. The statute does not require that the successive weeks should immediately precede the day of election. They were not so far removed therefrom as to work any possible prejudice to the result. The intervention of one day between the weeks certainly could not have had any effect one way or the other upon the result. The provisions of the statute in the matter of publication were substantially complied with. *Albuquerque v. Water Supply Co.*, 24 *N. M.* 368, 174 *P.* 217, 5 *A. L. R.* 519.

It was objected by the complainants that the Council has never determined to borrow the money by a bond issue. That it should do so at some time or other would seem plainly to be true. The Council cannot leave the sole decision of the question of borrowing money to erect a lighting plant to the voters. Theirs is not the responsibility of sole decision for the town. All they can do is to confer authority on Council in the exercise of its judgment to borrow the money and issue the bonds. Under the charter, the Council is the legislative body and before any bonds can be issued and any plant erected the Council must as the governing body assume the responsibility of authorizing the action. The Council has never assumed that responsibility by formal ordinance or resolution. The only thing in the record showing a determination by the Council

to borrow money on the bonds is an implication that it had done so, derived from the fact that bids for bonds were invited.

At what stage of the proceedings should the Council determine to borrow the money? Considerable discussion was had upon that point. So far as the proceedings are concerned, which have already transpired, the point is of no importance in view of the holding that the proceedings are invalid for the reasons hereinabove given. In case, however, the Council should inaugurate proceedings anew to borrow the money, it will not be amiss for me to say, without elaborating the point, that paragraph three of the section, quoted near the outset of this opinion, appears to indicate that the determination by the Council to borrow the money should be made after the public hearing and before the election. After the election, if the same is favorable, the Council would find it advisable and doubtless necessary to take other steps in the form of resolution or ordinance appropriate for completion of the business in an acceptable manner. But it is not for this court to act as adviser to the town concerning the detailed progress of its proceedings in the future.

It was contended by the defendants that the complainants are barred by laches in the filing of their bill. I can see no ground for sustaining them in that contention. Neither is it proper for this court to consider whether or not deceptive arguments were used by advocates of the bond issue to influence votes in its favor, as is contended was the fact by the complainants. Courts cannot disregard the result of an election because of some supposed argumentative chicanery practiced upon the voters. If they could, it is doubtful if any election result would ever stand undisturbed.

The preliminary injunction will issue as prayed for.