**Clayton KIRBY et al., Plaintiffs below, Appellants,**

**v.**

**The CITY OF MILFORD et al., Defendants below, Appellees.**

Supreme Court of Delaware.

Submitted Dec. 8, 1975.

Decided Dec. 22, 1975.

Henry duPont Ridgely of Ridgely & Ridgely, Dover, for plaintiffs below, appellants.

Randy J. Holland of Dunlap & Holland, P.A., Georgetown, for defendants below, appellees.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

McNEILLY, Justice:

In this appeal from the Vice-Chancellor's dismissal of plaintiffs' action for a declaratory judgment and injunctive relief against the Milford City Council's proposed bond issue, the sole question is the statutory sufficiency of the Council's resolution, published as notice to the electors of the proposal.

I

On October 8, 1974, the Milford City Council, at a regular monthly meeting,

with all members present, decided to undertake a water and sewer improvement project for portions of the City. The minutes of that meeting reveal that Council considered the itemized cost of the proposed undertaking, and possible financing through Farmers' Home Administration by a forty-year loan at 5% interest, to be amortized by specified City revenue increases. In order to set in motion the procedure for public acceptance or rejection of the proposal, Council unanimously adopted the following resolution:

WHEREAS, the Council of the City of Milford desires to borrow the sum of $1,700,000, and to issue bonds to secure the payment of such sum on the faith and credit of The City of Milford, to provide funds for the construction of extensions and improvements to the water and sewer systems maintained and operated by the City pursuant to and in accordance with the provisions of Section 22 of Chapter 726 of Volume 57 of the Laws of Delaware;

NOW, THEREFORE,

BE IT RESOLVED by the Council of The City of Milford as follows:

(1) The Council hereby proposes to the electors of the City of Milford that the sum of $1,700,000 shall be borrowed to finance the construction of extensions and improvements hereinafter described to the water and sewer systems maintained and operated by the City, pursuant to and in accordance with the provisions of Section 22 of Chapter 726 of Volume 57 of the Laws of Delaware.

(2) The Council further hereby proposes that said sum shall be borrowed by the issuance of bonds of the City of Milford of the aggregate principal amount of $1,700,000 and bearing interest from their date at a rate not to exceed seven (7) per centum per annum, payable semi-annually and constituting an issue of bonds payable in annual installments.

(3) It is proposed that the City bonds be issued in the following amounts and for the following purposes:

(a) $1,300,000 for the construction of interceptor and collection sewers, a pumping station and the machinery equipment and apparatus required therefor

(b) $400,000 for the purpose of extending water distribution lines, the construction of an additional source of water supply and the construction of water storage facilities and the machinery equipment and apparatus required therefor.

(4) The faith and credit of the City of Milford shall be pledged to the payment of said bonds and the interest thereon. A tax shall be levied annually on all the taxable property in the City to pay said bonds and the interest thereon as the same shall become due and payable and provision for such tax shall be made in the annual budgets adopted by the Council.

(5) A public hearing on said resolution shall be held on the 17th day of October, 1974, at 7:30 o'clock P.M., at the American Legion Home on Rehoboth highway. Notice of the time and place of such hearing shall be published in the Milford Chronicle, a newspaper published in the City of Milford, not less than one week before the time fixed for such public hearing.

(6) Such notice of hearing shall be in substantially the following form:

### NOTICE OF PUBLIC HEARING

NOTICE IS HEREBY GIVEN that the Council of the City of Milford, in the State of Delaware, will hold a public hearing on the 17th day of October 1974, at 7:30 o'clock, P.M., at the American Legion Home on Rehoboth Highway in the City of Milford, to consider a resolu-

tion which was adopted by such Council on October 8, 1974 providing as follows:

"WHEREAS, the Council of the City of Milford desires to borrow the sum of $1,700,000 and to issue bonds to secure the payment of such sum on the faith and credit of the City of Milford, to provide funds for the construction of extensions and improvements to the water and sewer systems maintained and operated by the City, pursuant to and in accordance with the provisions of Section 22 of Chapter 726 of Volume 57 of the Laws of Delaware;

NOW, THEREFORE,

BE IT RESOLVED by the Council of the City of Milford as follows:

(1) The Council hereby proposes to the electors of the City of Milford that the sum of $1,700,000 shall be borrowed to finance the construction of extensions and improvements hereinafter described to the water and sewer systems maintained and operated by the City, pursuant to and in accordance with the provisions of Section 22 of Chapter 726 of Volume 57 of the Laws of Delaware.

(2) The Council further hereby proposes that said sum shall be borrowed by the issuance of bonds of the City of Milford of the aggregate principal amount of $1,700,000 and bearing interest from their date at a rate not to exceed seven (7) per centum per annum, payable semi-annually and constituting an issue of bonds payable in annual installments.

(3) It is proposed that the City bonds be issued in the following amounts and for the following purposes:

(a) $1,300,000 for the construction of interceptor and collection sewers, a pumping station and the machinery equipment and apparatus required therefor

(b) $400,000 for the purpose of extending water distribution lines, the construction of an additional source of water supply and the construction of water storage facilities and the machinery equipment and apparatus required therefor.

(4) The faith and credit of the City of Milford shall be pledged to the payment of said bonds and the interest thereon. A tax shall be levied annually on all the taxable property in the City to pay said bonds and the interest thereon as the same shall become due and payable and provision for such tax shall be made in the annual budgets adopted by the Council * * *"

By order of the Council of the City of Milford Dated, October 8, 1974.

JUNE G. BARTO
City Secretary

(7) The City Secretary is hereby ordered and directed to cause said notice to be published as hereinbefore provided.

This resolution was published; a public hearing was held; a second resolution directing a referendum was published; the referendum was held; and the proposed loan was approved by a majority of the voters. Subsequently the plaintiffs', all City property owners, filed their action in the Court of Chancery.

II

Section 22(A) of the Milford Charter (57 Laws of Delaware, Chapter 726) preconditions the power of the City to borrow money and issue bonds on its own faith and credit as follows:

"Provided, however, that the borrowing of the money therefor shall have been authorized by the City Council and shall have been approved by the electors in the manner and at the time following:

"1. Council by resolution shall propose to the electors of the City that a stated amount of money be borrowed by the sale and issuance of bonds or Certificates of Indebtedness. The resolution shall state the amount of money pro-

posed to be borrowed, the purpose for which it is to be used, the manner of securing the same, and *all other pertinent facts relating to the loan, including the method of repayment, and the resolution* shall also fix a time and place for a public hearing to be held on the proposed borrowing." (Emphasis added)

Plaintiffs argue that because the resolution does not state the times of maturity and the approximate amount of taxes to be levied annually for interest and repayment, it does not comply with the Charter requirement that the resolution state: "all other pertinent facts relating to the loan, including the method of repayment." In support, plaintiffs submitted an affidavit of the President of the Farmers Bank of the State of Delaware, an expert financial advisor and consultant to the State, various municipal corporations and most school districts in Delaware on bond issues for more than twenty five years, in which he stated:

"It is my opinion, considering all of the foregoing [complaint, council minutes, and the resolution] that the October 8, 1974, resolution of the council of the City of Milford fails to state "all other pertinent facts relating to the loan, including the method of repayment . ."

In my opinion, the voters of the City of Milford were unable to determine the approximate annual cost to the taxpayers for the projects listed in the resolution."[1]

Plaintiffs rely heavily upon *Eastern Shore Public Service Co. v. Town of Sea-*

*ford,* 21 Del.Ch. 214, 187 A. 115 (1936) and *Peterman v. The City of Milford,* 34 Del.Ch. 370, 104 A.2d 382 (1954). However, these cases do not mandate the inclusion of times of maturity, as plaintiffs suggest, and both are clearly distinguishable from this case on their facts.

The unworkability of such a requirement was explained by the City's bond counsel[2] as follows:

". . . Inclusion of any additional information as to the 'times of maturity' of the bonds in the initial resolution should not be construed to be a requirement of said Charter, since that would render the Charter provisions unworkable for the following reasons:

a. In this particular situation, the City has been negotiating with the Farmers Home Administration of the United States Department of Agriculture (the "FHA") for a 5% loan. It is anticipated that the FHA will lend the money to the City and accept repayment over a 40 year period, an advantageous arrangement for the City. The annual maturities, however, are still subject to negotiation and no firm commitment has been received from FHA and certainly no commitment was in the offing in October of 1974. Had the City Council at that time set forth a specific 40 year maturity schedule, the City would have been "locked" into that schedule and, if the arrangement with FHA had not materialized, the City would have been forced to offer 40 year bonds for public sale in accordance with the City Charter. As-

---

1. A second affidavit of the President of the Farmers Bank, "based on complete information", concluded:

". . . it [the resolution] stated all other pertinent facts relating to the loan, including the method of repayment as I have defined pertinent facts, . . ."

However, it is of no substantive value in this appeal because it was based on extraneous sources such as newspaper articles evidencing plaintiffs' knowledge of the proposal, including time of maturity and sources of revenue for debt service, minutes of the public meeting

voter turnout, and the entire proposal, including sources of revenue and detailed negotiations with Farmers' Home Administration, which appeared in the City Council minutes but not in the resolution.

2. Counsel's New York law firm has for many years been employed as bond counsel for the State of Delaware, New Castle, Kent and Sussex Counties, and various municipalities in this State, as well as in New York, New Jersey, North Carolina and Virginia.

suming the Council then chose that alternative, the bonds would have been offered for sale with a maximum interest rate of 7% which in today's market would make 40 year bonds highly unattractive. The bonds would then have had to be sold at a discount which might probably be deemed a violation of the interest ceiling of 7% contained in the initial resolution. Putting that point aside, however, sale at a discount to yield, for example, 8% (which is realistic under present market conditions) would yield bond proceeds to the City in an amount considerably less than the $1,700,000 needed to finance the improvements, moreover, the City by this time would have signed contracts for construction amounting to the face amount of the bonds and would, therefore, not have enough bond proceeds to satisfy their obligations, thus necessitating a second bond election or inclusion of the deficiency in its current budget.

b. Assuming the City did not contemplate an FHA sale and 40 year bonds, but planned to enter the bond market in the normal manner, a prediction at the time of the adoption of the initial resolution of a maturity schedule would still place the City in an almost impossible position. The municipal bond market varies unpredictably so that to attempt to forecast at any particular moment what interest rates might be in the future is speculative. Thus, if the City had selected a 25 year maturity schedule in October of 1974, when the bonds were offered for sale in October of 1975 the market for 25 year bonds might be weak and the City might be forced to pay a higher than desired interest rate. On the other hand, 15–20 year bonds might be attractive to investors and would con-

sequently result in a significantly lower rate of interest. The City should have sufficient flexibility when it enters the bond market so as to make its offering as attractive to prospective purchasers as possible. The loss of such flexibility carries with it a greater tax burden on the inhabitants of the City. The General Assembly of the State of Delaware should not be presumed to have intended such a result.

c. The Charter itself indicates that the maturity schedule and other details of the bonds need not be determined by the City Council until after the bond election. Thus, Section 22(B)[3] of the Charter, which follows the initial authorization and election proceedings requirements in Sections 22(A) 1 through 7, provides for determination by the City Council of the "classes", the "times of maturity" and other details of the bonds at the time of offering the bonds for public sale. Prescribing the details of bonds at the time of sale thereof (which may not take place until years after the initial authorization proceedings) rather than in an initial resolution is the customary practice in Delaware and other states.[4]

■ We adopt the foregoing rationale and conclude that the Legislature did not intend that the initial resolution be required to include specific times of maturity as a pertinent fact relating to the loan.

As to plaintiffs' argument that the approximate amount of taxes or charges for services to be levied annually for interest and retirement are to be included in the initial resolution, we are satisfied that Section (4) of the resolution is sufficient. It states:

3. Section 22(B) provides in part:
   "The form of Bond or Certificate of Indebtedness, the times of payment of interest, the classes, the times of maturity, and provisions as to the registration shall be determined by the Council."

4. See also a similar analysis by the Supreme Court of California in *Clark v. City of Los Angeles*, 160 Cal. 30, 116 P. 722 (1911).

"(4) The basic credit of the City of Milford, shall be pledged to the payment of said bonds, and the interest thereon. Tax shall be levied annually on all the taxable property in the City to pay said bonds and the interest thereon, that they shall become due and payable and provision for such tax shall be made in the annual budget adopted by the Council."

Bond counsel concluded in his affidavit that this statement was sufficient, explaining:

"The above-quoted language of the resolution sets forth facts relating to the method of repayment of the bonds and clearly complies with that requirement of said Charter. In the municipal bond industry, the term "method of repayment" refers to the sources of funds to be applied to the payment of indebtedness. Funds available for the payment of public debt may be derived from charges made to the users of public utilities; special assessments levied on property specially benefited from a particular improvement; or from taxes levied upon all taxable property on an ad valorem basis. Section (4) of the resolution specifies that a tax shall be levied annually on all the taxable property in the City to pay the bonds, and provision for such tax shall be made in the annual budgets adopted by the Council."

While clearly the resolution does not state a specific amount of anticipated annual tax levies in terms of dollars and cents, we do not believe this to be fatal; indeed, it is questionable whether such specificity is required. We need not reach that question, however, for even assuming lack of full compliance with the charter requirement there was at least substantial compliance. In *Seaford, supra,* the Chancellor held:

"Statutes of the kind here under review are mandatory in character. The legislature intends them to be followed in even substantial particular. Literal compliance with their terms is not required in every item of detail regardless of its character. Substantial compliance is, however, exacted. (Citations omitted). The general principle is that where provisions of a statute are merely directory, failure to follow them with exactness will not vitiate the final result. It was observed by no less an authority than Chief Justice Cooley of Michigan that, "the courts in their anxiety to sustain the action of public officers, where irregularities have occurred without the intervention of bad faith, have gone to the very extreme in holding legislative enactments to be merely directory, and have perhaps sometimes made decisions which dispensed with those things which the Legislature intended as essentials."

\* \* \* \* \* \*

Affirmed.